ELWOOD D. FULTON, Petitioner, v. DANIEL D. FISHER, Judge.

In Banc, January 27, 1912.

1. **PRACTICE: Cross-bill: Dismissal of Plaintiff's Suit: Retention to Settle Equities Between Defendants.** A cross-bill, in equity pleading, is a matter of defense to the original bill, or an auxiliary suit by a defendant against the plaintiff or against other defendants, either to afford the cross pleader a more adequate defense to the original bill than a mere answer would afford, or to give him affirmative relief concerning the same matter covered by the original bill. Whilst the cross-bill may go against a co-defendant, yet it must also go against the plaintiff, and relief can be had against a co-defendant only when it is in aid of the cross pleader's defense to the original bill. Where

the cross-bill does not ask any equitable relief against the original plaintiff as to matters covered by his bill, but the only relief it seeks is relief against co-defendants, and the plaintiff's suit is dismissed, its dismissal carries with it out of court the cross-bill also.

2. ———: ———: ———: ———: **Counterclaim.** The statutory counterclaim embraces a cross-bill in equity, but it is not limited to that, because, under the statute, in an action on a counterclaim, the defendant may plead any other cause of action he may have against the plaintiff arising on a contract. But a cross-bill cannot be sustained as a counterclaim under the statute, if its cause of action does not arise out of and is not connected with a contract between the plaintiff and the cross pleader .or the contract or transaction set forth in plaintiff's petition, but arises out of a contract or transaction between the cross pleader and his co-defendants; and, in such case, the dismissal of the plaintiff's petition, carries out of court with it the cross-bill.

3. ———: ———: **Jurisdiction: Where New Matter is Brought in by Cross-bill: Waiver.** A defendant filed a cross-bill, to which relator, a co-defendant, filed an answer. Then said defendant withdrew its cross-bill, and filed an amended cross-bill, to which relator filed a demurrer, on the ground that the matters stated in the amended cross-bill did not constitute a cause of action arising out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim, and were not connected with the subject of plaintiff's action. The court overruled the demurrer, and then relator answered. The cross-bill raised for adjudication only matters between relator and said cross pleader, and unless relator has waived a want of jurisdiction in the court over the subject-matter of the cross-bill, the dismissal of plaintiff's petition carried the cross-bill out of court. *Held*, that, although the court may have acquired jurisdiction over relator for the purpose of plaintiff's suit, it did not, when he came into court to defend that suit, obtain jurisdiction over his person for the trial of an entirely distinct controversy between him and his co-defendant, lugged into the case under the disguise of a cross-bill. The court has jurisdiction of such matters as are set up in the cross-bill, but to acquire jurisdiction over relator it must do so in the manner prescribed by law, and the court could not use its jurisdiction, obtained by his appearance to plaintiff's suit, to force him to answer to that cross-bill; and by answering, after his demurrer had been overruled, he did not waive the want of jurisdiction.

4. ———: ———: **To Avoid Multiplicity of Suits.** Equity sometimes entertains a bill for the purpose of preventing a multiplicity of suits, but in doing so it does not allow· a bill

that is multifarious in character. A bill aimed to avoid a multiplicity of suits should be between the same parties, and relate to or grow out of the same subject. It should not be a cross-bill that brings in matters distinct and unconnected with those made the foundation of the original bill.

5. ———: ———: **Equity Jurisdiction: To Complete Justice.** The doctrine that equity, having acquired jurisdiction of a cause, will carry it on until complete justice is done, does not go to the extent of requiring a court of equity, having acquired jurisdiction of one cause, to extend its jurisdiction to embrace other subjects of litigation of different character and between different parties.

## Prohibition.

WRIT AWARDED.

*W. E. Haymond* and *Jones, Jones, Hocker & Davis* for petitioner.

(1) It is elementary that when an original bill is dismissed before final hearing, a cross-bill filed by a defendant falls with it. Cross. v. De Valle, 1 Wall. (U. S.), 14; Dows v. Chicago, 11 Wall. (U. S.) 112; Dewey v. Gas Coal Co., 123 U. S. 334; United States v. Land Co., 192 U. S. 355; C. & A. v. U. R. M. Co., 109 U. S. 713; Joyce v. Growney, 154 Mo. 253; Manning v. Gasharie, 27 Ind. 399; Krenning Co. v. Moore, 49 W. Va. 323; Mathison v. St. Louis, 156 Mo. 196; Life Ins. Co. v. Webb, 54 Ala. 694; Abels v. Ins. Co., 92 Ala. 383. We believe there is no case in the books which sustains the right of the court to retain jurisdiction of a cross-bill after the voluntary dismissal of the main bill where the relief sought by the cross-bill is relief against codefendants, as well as relief against the original complainant.

*Glennon, Clay, Walker & Howe* for respondent; *Oscar E. Buder* of counsel.

(1) The cross-bill of the Pittsburgh and Lake Erie Railroad Company was germane to the issues

raised by the original bill of complainant in the suit of Jones v. Ramsey and was therefore, under the code practice of Missouri, a counterclaim properly filed in said cause. R. S. 1889, secs. 2049, 2050. The decisions of Missouri analyzing these several sections establish the following: First, that where the controversy between the plaintiff and defendant is equitable in character, the defendant by his answer may set up new matter and obtain affirmative relief therein; second, that in determining the principles applicable to passing upon the sufficiency of a counterclaim in equity, the same general principles applied by courts of chancery in passing upon the sufficiency of a cross-bill, will be followed; third, that a court in an equitable proceeding has power where it is necessary for the purpose of disposing completely of the issues, to enter judgment in favor of one defendant against another. 2 Daniell's Ch. Pl. & Pr. (6 Am. Ed.), pp. 1527, 1530; 5 Ency. Pl. & Pr., 628; Kingsbury v. Buckner, 134 U. S. 650; Morgans La. & Tex. R. & S. Co. v. Railroad, 137 U. S. 171; Hurd v. Case, 32 Ill. 45; Swope v. Weller, 119 Mo. 556; Joyce v. Growney, 154 Mo. 253; Benoist v. Thomas, 121 Mo. 660; Machine Co. v. Hill, 104 Mo. App. 544; Kirkpatrick v. Corning, 39 N. J. Eq. 136; Miller v. Grigler, 83 Mo. App. 395. (2) The defendant Fulton, having voluntarily entered his appearance in the cause of Jones v. Ramsey and having furthermore filed an answer therein in the nature of a cross-bill, seeking affirmative relief from the defendant Pittsburgh and Lake Erie Railroad Company, and taking issue directly with the issues raised by said cross-bill not only with the said Fulton but with Jones, the complainant, and with the syndicate managers, thereby waived any right on his part to urge that said cross-bill was not germane to the original bill of complaint. Boland v. Ross, 120 Mo. 208.

VALLIANT, C. J.—Petitioner seeks a writ to prohibit the respondent, one of the judges of the St. Louis Circuit Court, from entertaining jurisdiction of a cross-bill filed by one of the defendants against its codefendants and the plaintiff in an equity suit in that court. The petition alleges that the original suit has been dismissed by the plaintiff, but the court has refused to dismiss the cross-bill and is assuming to exercise jurisdiction to hear and determine the issues presented by it. The petitioner in this proceeding is one of the defendants in the original equity suit, and is the one against whom the cross-bill is mainly aimed.

In order to determine whether the cross-bill went out of court with the dismissal of the original suit, it will be necessary to understand the relation it sustained to the original suit, whether it be considered as a cross-bill under the rules of equity pleading, or a counterclaim under our statute. The pleadings are very long and somewhat intricate but the general purpose of each is perhaps all that is necessary for our present use. The amended petition stated substantially as follows:

A written agreement was entered into between certain gentlemen, having for its purpose the acquiring by purchase or building certain railroad properties and purchasing coal lands in the State of West Virginia. The parties to the agreement were to furnish the money necessary for the venture in the proportion each set opposite his name. The amount was estimated to be $6,000,000, but in fact more than that sum was afterwards subscribed. The plaintiff, Jones, though not one of the original parties, came in soon afterwards subscribing $100,000. The association called itself the Little Kanawha Syndicate. Three of the original parties to the agreement, Gould, Ramsay and Guy were appointed managers of the business and were given plenary powers to do as they thought best. Large quantities of coal lands in West Virginia were

acquired, as contemplated, and some railroad property likewise. The syndicate managers afterwards sold the syndicate property for $8,500,000, and the amount has been paid to the syndicate subscribers except a sum less than $100,000, the exact amount plaintiff does not know, which is yet in the hands of the St. Louis Trust Company, depositary for the syndicate. While the business of the syndicate was under way the plaintiff Jones (so the petition says) was authorized by the managers to purchase for the syndicate certain coal lands in the State of Ohio, taking titles thereto in the name of the National Hocking Coal Company, a corporation organized by the plaintiff for that purpose, and to advance the money to pay for the same, the managers promising to pay him therefor, together with a reasonable compensation for his services. Accordingly plaintiff purchased 17,126 acres of coal land, taking titles as above indicated, and expended therein and thereabout the sum of $312,000, and still owes $90,000. Plaintiff has demanded payment for his outlay and for his services and has offered to transfer to the syndicate all the stock of the Hocking Coal Company, but they have refused to take the lands, or to pay for them or to pay plaintiff for his services.

It is charged in the petition that certain of the defendants (naming them), subscribers to the Syndicate agreement, purchased the stock of a small railroad in Pennsylvania, called the Green County Railroad, the property not exceeding in value $70,000, which they endeavored to sell to the Syndicate for $250,000, but on the objection of Mr. Gould that offer was rejected. But the petition goes on to say that afterwards when Mr. Ramsay, one of the managers, was selling the property of the Syndicate, he made it a condition of the sale that the purchaser should purchase the Green county railroad at an exorbitant price, thereby making a large profit to himself. It is also stated in the petition that the managers of the

Syndicate have suffered the defendant Fulton (who is the relator in this proceeding) to obtain a judgment against them as managers and against property then or formerly owned by the Syndicate, to the amount of $360,000, which was afterwards increased to $371,-000; that the judgment or decree was rendered against them by defendant through their negligence. That fact is pleaded to show the negligent management of the affairs of the Syndicate bearing on the application for a receiver.

We have not attempted in the above statement to give the substance of the contents of the petition in the equity case with the particularity that would be necessary if we were passing judgment on the merits of the controversy between the plaintiff and the defendants in that suit, but only to show the general nature and purpose of the plaintiff's suit, in order to understand the relation which the cross-bill bears to that suit. The main, if not the only, purpose of that suit, was to require the members of the Syndicate to take title to those Ohio coal lands and reimburse the plaintiff for his outlay and pay him for his services. The charges of mismanagement, neglect of duty, etc., are intended to show the necessity for the appointment of a receiver, but all the statements beyond those relating to the Ohio coal lands are of facts pointing to the necessity of equitable relief in the matter of those coal lands. Take out of the plaintiff's petition what he says about the obligation of the Syndicate managers to take the Ohio Coal lands off his hands and pay him for them and there would be nothing left; the other averments would then be without point or purpose.

Afterwards the plaintiff filed a supplemental petition, stating that the Pittsburg and Lake Erie Railroad Company was the purchaser mentioned in the original petition of the property of the Syndicate and

the Ohio coal lands, and withholds $400,000 of the purchase price until this controversy is determined, that therefore that railroad company was a necessary party to the suit.

In response to that supplemental petition the Pittsburg and Lake Erie Railroad Company filed a cross-bill, and afterwards an amended cross-bill which is the subject of this proceeding, the relator contending that the circuit court had no jurisdiction to consider it after the original suit was dismissed.

The substance of the amended cross-bill, in so far as it is necessary to state it for the purpose of this suit, is as follows:

The Pittsburg and Lake Erie Railroad Company, the cross-petitioner, under a contract in writing with the managers of the Syndicate, purchased all the property of the Syndicate. A schedule of the property so purchased is contained in the contract, but the Ohio coal lands are not mentioned. The price to be paid was to be ascertained from data given, the whole not to exceed $8,500,000, whereof the railroad company has already paid $8,100,000, and stands ready to pay the balance when titles are conveyed to it as further specified in the cross-bill.

There is no distinct claim to the Ohio coal lands in the cross-bill, further than the statement on information and belief that they of right belong to the Syndicate, and if so the Syndicate should perfect its title to the same and convey them to the cross-petitioner.

The main statements in the amended cross-bill are in reference to the coal lands and railroad properties in West Virginia. The titles to a large quantity of those coal lands were in the defendant Fulton, the relator in this proceeding. The complaint against him is that under the contract by which the cross-petitioner became the purchaser of the property, and at the instance of the managers of the Syndicate in order to carry out their agreement, Fulton undertook to convey

to the St. Louis Union Trust Company, as trustee for the Syndicate, titles to all the coal lands so held by him, to be by the St. Louis Union Trust Company conveyed to the Pittsburg Union Trust Company, as trustée for the railroad company, but that in his deed in describing the lands he referred, for such descriptions, to certain underlying deeds, alleged to have been recorded in certain counties in West Virginia in certain books and at certain pages, and that the St. Louis Union Trust Company, in accordance with its duty in that behalf, executed its deed, conveying the same lands by the same descriptions, to the Pittsburg Union Trust Company for the railroad company; but that in tracing the titles by the descriptions so given it was found that there were no such deeds on record, and so the railroad company failed to obtain titles to 17,256.19 acres of coal lands in West Virginia. And the cross-bill says that after making his deed to the St. Louis Union Trust Company, the defendant Fulton instituted a suit in equity in the circuit court of Braxton county, West Virginia, against the Syndicate, the St. Louis Union Trust Company and the Pittsburg Union Trust Company, alleging that he, at the request of the managers of the Syndicate, conveyed 17,256.19 acres of coal lands to the trust company as above mentioned, and that there was due him from the Syndicate for the price thereof $101,240.18, and for profits and commission on sales of lands and stocks to the Syndicate the further sum of $260,000, for which he asked a decree giving him a lien on the 17,256.17 acres and also on 21,650.56 acres of other coal lands in West Virginia, which had been conveyed to the railroad company by another trustee of the Syndicate under the contract of purchase above mentioned and to which the railroad company had title; that Fulton had obtained a decree in his suits for the amounts claimed, the decree being to the effect that unless the defendants in that suit should pay within sixty days the amount

found to be due Fulton the coal lands should be sold to satisfy the judgment.

The amended cross-bill goes on to complain of other matters relating to property which the pleader claims under the contract of purchase, and for which it asks relief in equity against the Syndicate and Fulton as a member thereof, but those matters do not relate to the subject of the original suit in equity, to-wit, the Ohio coal lands. In pursuance of the prayer of the cross-bill the court issued a temporary injunction enjoining him from taking any further steps towards the prosecution of his suit in West Virginia.

To this amended cross-bill Fulton filed a demurrer on the ground that the court had no jurisdiction of it, because it was really not a cross-bill to the original bill in equity; and it was not a counterclaim within the meaning of our statute. The demurrer was overruled, and Fulton filed answer.

The railroad company filed a supplemental cross-bill showing that Fulton had instituted a suit in West Virginia against the railroad company on the ground that he had just discovered that, by the terms of the contract whereby the railroad company purchased the assets of the Syndicate, the railroad company was to pay whatever the Syndicate owed on account of properties purchased by it, and that there was still a large balance due the Syndicate on that account out of which Fulton was entitled to have the railroad company pay him for his judgment against the Syndicate; the purpose of the suit was to obtain a decree in the West Virginia court holding the railroad company liable to the extent of its indebtedness to the Syndicate for the amount Fulton claimed was due him from the Syndicate; that Fulton was thereby claiming satisfaction out of the same fund that Jones, the plaintiff in the original equity suit, was seeking to reach for satisfaction for his claims in reference to the Ohio coal lands. The supplemental cross-bill went on to say that Fulton

had already, before filing his second suit in West Virginia, voluntarily submitted himself to the jurisdiction of the St. Louis Circuit Court, and by his answer and counterclaim to the amended cross-bill had set up substantially the cause of action that he asserted in the West Virginia court, and was now here seeking substantially the same affirmative relief against the railroad company that he is asking in the West Virginia court; that since Jones is not a party to the suit in West Virginia that court cannot decide as between those two which, if either, is entitled to the fund they both claim. The supplemental cross-bill avers that the decree in the West Virginia court wherein judgment for $371,922.86 was rendered in favor of Fulton against the Syndicate was not rendered on a trial of issues on its merits, but by default, the averment being that certain counsel representing the Syndicate managers appeared in court for the purpose of making certain motions, and therefore it was held that they had thereby entered the appearance of the managers and given the court jurisdiction of them and judgment was entered by default; it is averred that against Fulton's claim the Syndicate managers have credits and counterclaims, which are proper subjects for accounting and also that an investigation into the character of Fulton's claim will show that the railroad company is not liable to him. In accordance with the prayer, a temporary injunction issued, enjoining Fulton from proceeding further in the suit in West Virginia against the railroad company.

Defendant Fulton made a full answer to the amended and supplemental bills vindicating his own conduct in reference to the conveyance of titles to the West Virginia coal lands to the St. Louis Union Trust Company, and showing his right to maintain his two suits in West Virginia, and praying that the railroad company be required to pay the amount of his claim

against the Syndicate and take the lands covered by his decree in the West Virginia court.

Answers of all the other defendants to the original suit and to the cross-bill, who were served with process, were filed, vindicating the rights of the Syndicate and its managers in the transactions involved. It is not deemed worth while, for the purpose of this proceeding, to state more particularly the contents of those answers. The cause was sent to a referee to try all the issues.

In the order referring the cause, the court directed the referee to first hear the testimony relating to the matters put in issue by the original bill and answers thereto and report with the evidence his findings of facts and conclusions of law relating to those matters, and to take no testimony on any other branch of the cause until he had made such report and the court had thereupon made an interlocutory decree with reference to the rights of the original plaintiff Jones, after which the referee should proceed to try the issues made by the answers and cross petitions and replies thereto and report as before. In accordance with that order the referee tried the issues relating to the original suit and filed his report recommending that the plaintiff's petition be dismissed. Plaintiff filed exceptions to the report and before it was acted on filed a motion to dismiss his suit. When that motion came on for hearing the court rendered judgment dismissing the plaintiff's petition "without prejudice to the plaintiff or any of the parties to proceed with the trial of the issues framed upon the cross-bills herein." Plaintiff moved to strike the cross-bill and answer from the files; defendant Fulton filed a like motion; those motions were overruled, then the relator Fulton came to this court asking that the circuit judge be prohibited from proceeding to try the issues raised by the cross-bill.

I. It cannot be said that there is nothing in the cross-bill that is germane to the original suit. The plaintiff in that suit by his supplemental petition brings the Pittsburg and Lake Erie Railroad Company in as a party defendant on the theory that it is holding back a part of the purchase money it owes the Syndicate on account of certain claims it has against the Syndicate arising out of the purchase of its assets; and the plaintiff Jones is interested in that issue, because, if he succeeds in his suit, the money that is to pay him for his outlays in the matter of the Ohio coal lands will have to come, in part at least, out of that part of the purchase money which the railroad company is holding back from the Syndicate, if it should turn out that the railroad company is not justified in withholding it. Then when the railroad company came in with its cross-bill it took the position that if the plaintiff Jones is right in his claim the Ohio lands belong to it. To that extent the issues tendered by the cross-bill are germane to those tendered in the original bill. But the cross-bill does not limit itself to those matters and in fact it contains no additional affirmative statements in reference thereto which could influence the judgment; it is content to leave the plaintiff's cause as he states it in his petition, only claiming that if the plaintiff succeeds then the Ohio lands belong to the railroad company. Those issues were tried by the referee and his findings were adverse to the plaintiff's claim and his recommendation was that the plaintiff's suit be dismissed. The plaintiff filed exceptions to that report, but the railroad company filed none, it therefore acquiesced in the findings. The dismissal of the plaintiff's suit carried with it out of court all that there was in reference to it in the cross-bill, but it left entirely unheard all the matters in the cross-bill relating to the West Virginia properties and the conflicting claims of the parties in relation thereto. Those matters are foreign to any

thing that was in litigation under the original suit and constituted an independent suit, if an independent suit could be inaugurated in that way. Jones has no interest in the West Virginia lands, Fulton has no interest in the Ohio lands, Jones has no interest in the controversy between Fulton and the railroad company or between Fulton and the Syndicate, and Fulton has no interest in the controversy between Jones and the Syndicate.

Our statute does not use the term "cross-bill," but the office of a cross-bill is as well recognized in our practice now as it was under the old chancery practice, and it means now what it meant then. Section 1806, Revised Statutes 1909, authorizes a defendant in his answer to make a "statement of any new matter constituting a defense or counterclaim." Section 1807 defines a counterclaim; it is: "First, a cause of action arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action; second, in an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action." In either case it must be a claim "existing in favor of a defendant and against a plaintiff, between whom a several judgment may be had." The statutory counterclaim embraces a cross-bill in equity, but is not limited to that, because, under the statute, in an action on a contract, the defendant may plead any other cause of action he may have against the plaintiff arising on a contract. The cross-bill now under discussion in so far as it relates to the West Virginia lands, cannot be sustained as a counterclaim under the clause of the statute last mentioned, because the cause of action does not arise out of a contract between Jones and the Pittsburg and Lake Erie Railroad Company; nor can it be sustained as a cross-bill or counterclaim under the first clause, be-

cause it does not state a cause of action arising out of the contract or transaction set forth in the petition of Jones as the foundation of his claim, nor is it connected with the subject of Jones's action, nor can it be sustained under either the first or the second clause, for the further reason that it is not, in the language of the statute, a claim existing in favor of the defendant railroad company against the plaintiff Jones.

A cross-bill in equity pleading is a matter of defense to the original bill, or an auxiliary suit by a defendant against the plaintiff or against other defendants, either to afford the cross-pleader a more adequate defense to the original bill than a mere answer would give, or to afford him affirmative relief concerning the same matter covered by the original bill. Whilst the cross-bill may go against a codefendant, yet it must go also against the plaintiff and relief can be had against a codefendant only when it is in aid of the cross-pleader's defense to the original bill. In Joyce v. Growney, 154 Mo. 253, construing the statute, the court said: "It does not authorize a counterclaim or equitable cross action of one defendant against another, except as one defendant may be entitled to such relief against another as will enable him to make good his defense to the plaintiff's suit. Whatever affirmative relief one defendant may have as against another must be of a character responsive to the plaintiff's suit. . . . The statutes relating to pleadings do not authorize one defendant to inject into the plaintiff's suit an independent suit, either at law or in equity, against his codefendant not necessary or germane to his defense to the plaintiff's suit." In the case now before us, the Pittsburg and Lake Erie Railroad Company is seeking relief mainly against its codefendant Fulton to annul his judgment obtained in the West Virginia court against the managers of the Syndicate and his lien thereunder to the West

Virginia coal lands, and, incidentally, against the managers of the Syndicate relating to the same matter. That is not necessary to aid the railroad company in its defense to the original bill; all connection that the railroad company had in the original suit ceased when the plaintiff dismissed that suit; what was left of the cross-bill had nothing to do with it. In Mathiason v. St. Louis, 156 Mo. 196, the court quoted with approval 5 Ency. Pl. & Pr., 641: "If a defendant, in filing a cross-bill, attempts to go beyond this, and to introduce new and distinct matter, not essential to the proper determination of the matter put in litigation by the original bill, although he may show a perfect case against either the complainant or one or more of his codefendants, his pleading will not be a cross-bill but an original bill. And no decree can be rendered on such matter." In Story's Equity Pleading (10 Ed.), section 389, it is said: "A cross-bill *ex vi terminorum,* implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill."

A cross-bill must be germane to the original bill and defensive in its character, but it may go beyond a mere defense and show cause for affirmative equitable relief touching the subject of the original bill; if it is merely a defense to the original suit the dismissal of the original suit carries the cross-bill out of court—when the attack is withdrawn there is nothing to defend—but if the cross-bill makes a case which entitles the cross-pleader to equitable relief against the original plaintiff touching the subject of the original bill, then the dismissal of the original bill does not carry with it the cross-bill; the cross-pleader is entitled to his equitable relief. This distinction is recognized in Story's Equity Pleading (10 Ed.), section 399, note a. But that rule will not help the cross-pleader in this

case because it is not now asking any equitable relief touching the plaintiff Jones's claim to the Ohio coal lands, the only thing it is seeking is relief against Fulton and the Syndicate concerning the coal lands in West Virginia, and Fulton's judgment in the county of that State; those matters cannot be litigated under the form of a cross-bill in this suit.

II.    But it is contended that Fulton, having answered the cross-bill, having joined issue and prayed relief touching the same, has submitted himself and his rights to the judgment of the court in that suit and it is now too late to assert want of jurisdiction in the court.

The Pittsburg and Lake Erie Railroad Company first filed a cross-bill, to which Fulton filed answer; then the railroad company withdrew its cross-bill and filed an amended cross-bill, to which Fulton filed a demurrer, on the ground that the matters stated in the amended cross-bill do not constitute a cause of action arising out of the contract, or a transaction set forth in the petition as the foundation of the plaintiff's claim, and they are not connected with the subject of that action. The court overruled the demurrer and after that Fulton answered.

When the railroad company withdrew its original cross-bill it released Fulton from the consequence, whatever it was, of having answered it; with the cross-bill out, the answer was out. Therefore when the amended cross-bill was filed Fulton had a right to demur to it even if it covered the same facts as contained in the original cross-bill. [Beattie Mfg. Co. v. Gerardi, 166 Mo. 142, l. c. 156.]

After his demurrer was overruled did Fulton by answering waive his right to object to the jurisdiction of the court over the subject-matter of the cross-bill? This court has often decided that answering over after demurrer overruled waives every defect in the peti-

tion except the objection to the jurisdiction of the court over the subject-matter of the action, and that the petition does not state facts sufficient to constitute a cause of action. This ruling conforms to the requirements of section 1804, Revised Statutes 1909.

Suits in equity are proceedings *in personam,* therefore when the court lawfully acquires jurisdiction of the persons it may adjudge their property rights regardless of where the property is situated. But it does not follow that because the court has acquired lawful jurisdiction of the person for one purpose it may, in that suit, hold him to answer for another matter. For example, Mr. Fulton, a resident of the State of Pennsylvania, is made a party defendant to the suit concerning certain coal lands in Ohio, in which suit he is interested only as a member of the Syndicate or as a creditor of that Syndicate; he comes from his home in Pennsylvania and enters his appearance, whether voluntarily or under stress of the order of publication it is immaterial, to defend his interest in that suit, then advantage is taken of his appearance here to serve him with a copy of a so called cross-bill that relates entirely to other matters involving large interests. Can it be said the court has thus acquired jurisdiction of him for that purpose? He appealed to the court for relief, but the court overruled his demurrer, and he found himself in the position where he must either let the cross pleader take judgment against him or answer, and so he answered. It does not clearly appear from the record whether Fulton was here in person or entered his appearance to Jones's suit by attorney, probably the latter, because if he was here in person it would perhaps have resulted in an independent suit against him, which would have a different aspect. There was no new suit instituted no writ served, it was only an effort to tack on to Jones's suit another entirely different suit. Of course the circuit court had general jurisdiction of subjects of that kind,

but to acquire jurisdiction of the subject of that suit, it would have to acquire it in the way pointed out by law. This is not like a case where a party is sued and enters his special appearance by motion to quash the return, or otherwise pleads in abatement to the jurisdiction of the court over his person. In such case if after adverse ruling he enters his appearance and pleads to the merits, he waives the point of jurisdiction over the person. Here Fulton was unconditionally in court for all the purposes of the Jones suit, subject to its judgment and entitled to its protection; his complaint now is, not that the court had not jurisdiction of his person, but that it used its jurisdiction to force him to answer in another suit. We hold that the court did not acquire jurisdiction of the subject of the West Virginia controversy by the means pursued and that by answering the amended cross-bill Fulton did not give such jurisdiction.

III. It is argued that the court should entertain the cross-bill in this case to prevent a multiplicity of suits. Equity sometimes entertains a bill for the purpose of preventing a multiplicity of suits, but in doing so it does not authorize a bill that is multifarious in character, in fact it forbids such a bill. Story's Equity Pleading (10 Ed.), section 271, says: "By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the writing in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." A bill aimed to avoid a multiplicity of suits should be between the same parties and relate to or grow out of the same subject.

IV.   The doctrine is also invoked that equity having gained jurisdiction of a cause will carry it on until complete justice is done either in law or in equity.   But that doctrine does not go so far as to say that a court of equity having acquired jurisdiction of one cause of action will extend its jurisdiction to embrace other subjects of litigation of different character and between different parties.

The learned trial judge himself recognized that he had on his hands two entirely different suits, and therefore when he sent the cause to a referee he ordered that one suit should be tried first and nothing done in the other until the final report on the first. The report that came in in that case disposed of the whole of Jones's original suit and that suit was then ready to progress to final hearing before the chancellor, but the plaintiff arrested that progress by dismissing his suit.

We hold that the dismissal of that case carried the amended and supplemental cross-bill and all pleadings relating thereto out of court.

The writ of prohibition is awarded as prayed.

*Lamm, Graves, Kennish* and *Brown, JJ.,* concur; *Woodson, J.,* dissents; *Ferriss, J.,* not sitting.