MICHAEL WOLZ, Executor of KATE A. LOWEN, v. FRANKLIN VENARD et al.; ROBINSON and ATKINSON, Appellants.

Division One, December 6, 1913.

1. **REFORMATION OF DEED: Mutual Mistake: Sufficient Pleading.** To authorize a court of equity to correct a mistake in a contract, it must be mutual. But the pleader is not required in set terms to allege a mutual mistake. If he sets forth

substantive facts by way of averments which necessarily mean mutuality of mistake, that will be sufficient. If the mortgagor alleges that he loaned the mortgagee a sum of money and by agreement between them the loan was to be secured by a mortgage upon a certain tract of land, and in pursuance thereof the mortgage was executed, but by mistake the land was misdescribed and not conveyed as agreed, the petition charges a mutual mistake, although it further avers that the draftsman of the deed erroneously inserted the wrong description, for that averment may be considered as merely supplementary and redundant.

2. **DEMURRER: Waiver.**   Where defendant demurred to the petition on the ground of· multifariousness and a misjoinder of parties, and the demurrer being overruled answered over, he effectually waived those grounds.

3. **REFORMATION OF DEED: Mutual Mistake: Sufficient Evidence.**   Where the grantors in the deed of trust admit and the beneficiary testifies that it was agreed that the instrument was to describe a certain tract of land and by mistake another was described, there is such mutual mistake established as authorizes the court to reform the deed so as to make it express their real intention.

4. **————: Extent of Decree: Outside of Pleadings.**   A decree must respond to the issues and one outside of them is error. Where plaintiff brought suit to reform a deed of trust on the ground that by mutual mistake the land had been misdescribed therein, and there was nothing in the petition demanding the clearing up of the title of the mortgagor's subsequent grantee except in so far as that was necessary to the reformation of the deed of trust, and there was not filed any cross-action or cross-bill as between said grantee and purchasers at invalid execution sales under valid justice's judgments, and there was no averment in the answers that filled the office of a cross-action between said defendants or between other defendants, one of whom had made a warranty deed to the other, a decree which undertook to settle all claims between said grantee and his codefendants and canceled said warranty deed cannot stand.   The decree should have stopped with reforming the deed of trust and adjudging that whatever rights or claims defendants had under such judgments, executions and deeds were subject to the deed of trust as reformed.

5. **————: ————: Cross-bill.**   A cross-action or cross-bill as between defendants must be germane to plaintiff's bill and in the nature of a defense in order to give jurisdiction to found a decree thereon.

6. **————: ————: ————: Quieting Title.**   Sec. 2535, R. S. 1909, does not authorize a chancellor to go outside the pleaded

issues in his decree. That section is to be administered in conformity to the Code of Civil Procedure.

7. **EXECUTION: Issued Out of Wrong Court: Justice's Judgment: Transcript to Another County.** Where judgment has been obtained in a justice of the peace court and a transcript taken to the circuit court of the county, execution should issue out of that court by its clerk, and not out of the circuit court of the county in which defendant's lands lie; and if issued out of the latter court the sheriff has no legal authority to sell the lands. Nor is the invalidity of his deed altered by the fact that a transcript of the justice's judgment was filed in the county in which it was obtained, and then a transcript thereof filed in the county in which the land lies.

8. **REFORMATION OF DEED OF TRUST: Sale Under Subsequent Judgment.** A sale under a judgment obtained after plaintiff had brought suit to reform a deed of trust in her favor, and purchase by a party who had actual notice of the mistake in its description and was a defendant to her suit to reform, there being no fraud in her deed of trust making it subject to a creditor's bill, does not affect her right to such reformation, for said judgment was not then a prior lien.

9. **COSTS: Not Assigned as Error.** Unless the motion for new trial assigns as error the taxing of the costs against defendants in plaintiff's suit to reform and have foreclosed her deed of trust, the assignment on appeal will not be considered.

10. **JUDGMENT: Revivor.** A judgment is revived, if at all, in the court rendering it, and on *scire facias*, and not in other courts and on other process. Sec. 2535, R. S. 1909, in spite of its comprehensiveness, does not serve the purpose of reviving or continuing the liens of judgments when such liens have expired or are about to expire.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED.

*Hewitt & Hewitt* and *E. G. Robison* for appellants.

(1) It is the well-established rule of pleading that every fact the plaintiff, in order to recover, must prove, must be pleaded and alleged in the pleading, so that the issue can be made thereon. Shohoney v. Railroad, 223 Mo. 671; Nervins v. Moore, 221 Mo. 357;

Verdin v. St. Louis, 131 Mo. 151; Lantz v. Krug, 93
Mo. 513; Pier v. Heinrich, 52 Mo. 336; Murphy v. Wilson, 44 Mo. 317. The plaintiff having based her cause
of action upon the mistake of the scrivener, in order
to recover it was necessary to allege and prove he acted
for both the parties to the trust deed. Brocking v.
Straat, 17 Mo. App. 305; Benn v. Pritchett, 163 Mo.
572; Dougherty v. Dougherty, 204 Mo. 238; Meek v.
Hurst, 223 Mo. 696. (2) The defendants' demurrer to
plaintiff's evidence should have been sustained, for
the reason that the evidence does not show a mutual
mistake, but if anything, a mistake of some one who
drafted the trust deed at the instance and request of
grantor Neff alone, which is not sufficient to have reformation by plaintiff. Brocking v. Straat, 17 Mo.
App. 305; Benn v. Pritchett, 163 Mo. 560; Dougherty
v. Dougherty, 204 Mo. 231; Meek v. Hurst, 223 Mo.
692. (3) The court erred in decreeing Elmer Neff
to be the owner of the land in controversy, even though
the plaintiff's trust deed should be reformed. He purchased it under the agreement, and according to the
admitted and uncontradicted evidence Elmer Neff paid
nothing for the land, and, if he fails in this suit is to
pay nothing. Bailey v. Winn, 101 Mo. 655. (4) Three
sales were had under judgment against Ransom Neff,
and at each sale David Atkinson was the purchaser,
and the last was a valid sale and conveyed all interest of Ransom Neff, if at the time of the levy he was
the owner thereof. This is conceded by plaintiff and
other defendants, who deny he was the owner. The
appellants contend he was the owner and that the sale
by Meek, sheriff of DeKalb county, on May 3, 1909,
divested Ransom Neff of his title, and vested same in
David Atkinson, which title vested in Joseph Robison
under the covenants of warranty in the deed previously
made by Atkinson to Robison. Sec. 2871, R. S. 1909.
The court erred in not reviving the lien of the judgment of David Atkinson against Ransom S. Neff, and

rendering judgment in his favor for same, as all parties were in court. R. S. 1909, sec. 2535.

*O. M. Shanklin* for respondent Elmer L. Neff.

(1) The first and second sheriff's deeds to Atkinson were clearly void because of their dependence on an execution from the wrong court. Sec. 2166, R. S. 1909. (2) The deed from Ransom Neff and wife is regular and recites a valid consideration. It therefore conveyed the whole title to the land to Elmer Neff. (3) Whether Elmer Neff paid the whole or any part of the consideration recited in his deed cannot affect the sufficiency of the conveyance. The recited consideration cannot be impeached for the purpose of destroying the conveyance. Draper v. Shoot, 25 Mo. 202; Wishart v. Gerhart, 105 Mo. App. 116. (4) If the defendant Atkinson would deny the payment he must ground his denial on an allegation of fraud against himself as a creditor. This he failed to do, though Elmer Neff specifically pleaded his absolute title to the land by virtue of the deed from Ransom and his wife. Montgomery Co. v. Auchley, 103 Mo. 499; County of Montgomery v. Auchley, 92 Mo. 126; Jones v. Shepley, 90 Mo. 307; Saunders v. Blythe, 112 Mo. 5; Bobb v. Bobb, 7 Mo. App. 507. (5) Atkinson had no lien, since the liens of the justice transcript judgments had expired and the judgment obtained in the circuit court had never been certified to the DeKalb county records. Secs. 2125, 2164, 2165, R. S. 1909. (6) Elmer Neff thus having the title and Ransom having none, the third sheriff's deed purporting to convey the interest of Ransom conveyed nothing. (7) The DeKalb Circuit Court had no jurisdiction to revive the judgments originally rendered in the circuit court of Buchanan and Andrew counties; nor did the appearance of the parties confer such jurisdiction, as it would be in direct contravention of the statutes. Sec. 2166, R. S. 1909.

*Wm. M. Fitch* for respondent.

(1)    Appellant's brief discusses at great length the question that the petition of the plaintiff fails to state a cause of action under the first count. The record shows that these appellants, as defendants below, had filed their answer; at the time of going to trial they withdrew their answers, and filed general demurrers; those demurrers were overruled by the court; these defendants did not stand on their demurrers, but instead of so doing, they refiled their answers and proceeded to trial. By this procedure on the part of these appellants the point raised by their demurrers was and is waived, and they will not be now heard to raise same. State ex rel. v. Bright, 224 Mo. 524; Duff v. Duff, 156 Mo. App. 247. It is likewise held that where a defendant filed a demurrer, which was overruled, and he then answered over, he waived all questions relating to misjoinder and multifariousness in the bill. Hendricks v. Callaway County, 211 Mo. 536; Fuggle v. Hobbs, 42 Mo. 537. These defendants, by pleading over, going to trial, and trying the cause on the merits have waived their demurrers, and should not now be heard to raise same. (2) Two of the sheriff's sales were absolutely void, and passed no title to David Atkinson; both of these sales were based upon a judgment rendered by a justice of the peace in Buchanan county, a transcript thereof filed by the plaintiff therein in the circuit court of Buchanan county, and afterwards a transcript of that transcript was filed in the office of the clerk of the circuit court of DeKalb county. On this transcript so filed in DeKalb county, an execution was issued from the office of the clerk of the circuit court of DeKalb county, and the first and second sales mentioned were had thereunder. These sales passed no title; the clerk of the circuit court of DeKalb county had no power to issue an execution based on the transcript judgment. Sec. 2166, R. S. 1909. The

third sale was made after this suit was filed and had
been pending some months and David Atkinson and
Joseph Robinson had been made parties defendant
therein and had been duly summoned as such. But this
sale was made in the face of the notices publicly given
at the time by the plaintiff and the defendant Elmer
L. Neff of their claims respectively in and to this land;
in fact, this cause was for trial and was tried at the
time said sale was made. At this sale defendant David
Atkinson was seeking to sell the interest of Ransom S.
Neff in the lands in suit; at that time, and some four
years prior thereto, Ransom S. Neff and Sarah V.
Neff, his wife, by their joint deed had conveyed said
lands to defendant Elmer L. Neff. David Atkinson
then had actual notice of the claim of Elmer L. Neff,
but notwithstanding such notice, he caused said land
to be sold and he bought same. (3) Appellants com-
plain because the court refused to revive the lien of
the judgments introduced in evidence by David At-
kinson against Ransom S. Neff. But what power, au-
thority or jurisdiction did the court have to revive
the lien of those judgments in this proceeding? Ap-
pellants cite Sec. 650, R. S. 1899, now Sec. 2535, R. S.
1909, as authority for this procedure. That section
does not provide a method of procedure for the re-
vival of a judgment, although it is very comprenhen-
sive concerning the power of the court to determine
titles to real estate. The only authority for reviving
a judgment in this State in a court of record is in Secs.
2125 to 2132, R. S. 1909. From the above sections it
further appears that no judgment can be revived and
have its lien extended except by *scire facias*. Arm-
strong v. Crooks, 83 Mo. App. 148; Goddard v. Dela-
ney, 181 Mo. 578.

LAMM, J.—In March, 1908, Kate A. Lowen sued
an aggregation of defendants in the DeKalb Circuit
Court. From a decree in her favor, and in favor of

one of their codefendants, two of the defendants (Robison and Atkinson) appeal. Pending that appeal, plaintiff died and the cause stands revived here in the name of Michael Wolz, her executor. For convenience we will continue to speak of her as plaintiff.

As a part of the relief granted to one of the defendants not appealing was against the appealing defendants, and as questions of practice and pleading are submitted, and the decree in one or another angle is assailed, it will be useful to state the situation on such phases with some particularity.

The petition is in two counts. By the first plaintiff sought to reform a deed of trust by correcting the misdescription of land, to declare it a first lien and to foreclose. To that end she averred in said first count, in effect, that she loaned $300 to Ransom and Sarah Neff, husband and wife, in July, 1899, evidenced by a note due in three years; that said Neffs, as husband and wife, owned two tracts of land in DeKalb county (we omit description because diffuse and technical, and call them tracts one and two); that tract one comprised twenty-four and seventy-five one-hundredths acres, and tract two eight acres; that by agreement between plaintiff and said Neffs, said note was to be secured by a deed of trust in the nature of a mortgage which was to be a first lien on both said tracts; that pursuant to such agreement a deed of trust was executed whereby said agreement to convey said described land was attempted, but that the land was misdescribed and not conveyed as agreed. The petition also says that the draftsman of the deed erroneously inserted the wrong description; that the note is due and unpaid; and that the said deed of trust was at once spread of record.

In the second count all the allegations of the first are reasserted and a cause of action is stated under old section 650 to try, determine, adjudge and quiet title. In that count it is alleged that, subject to the

deed of trust mentioned in the first, Ransom and Sarah Neff owned the fee; that the several defendants make some claim of right, title, interest and estate in said real estate adverse to the title and estate of plaintiff, the exact nature of which is unknown to her.   The prayer of this count is that the title of defendants and plaintiffs be tried and determined and that the court adjudge, settle and define whatever interest the several parties plaintiff and defendants may have, etc.

There was a group of defendants who made default, suffered judgment and stand mute here; another groop demurred, their demurrers were overruled and they refused to plead over.   None of that group appeal, hence they fall out of the case.   Two defendants, Ransom and Sarah Neff, answer by solemnly admitting the allegations in the first count of the petition. As to the second count they disaffirm any title in themselves, but aver that their codefendant, Elmer Neff, acquired their title in May, 1905, by deed from them. Sarah and Ransom abide the decree.

Elmer Neff was made defendant.   He answered admitting the allegations of the first count.   As to the second count his answer avers that, subject to the lien of plaintiff's deed of trust, he acquired the title of Ransom and Sarah by deed in May, 1905, and, subject to the claim of plaintiff, claims all the right, title and interest in said land and prays to be decreed owner.   Elmer abides the decree.

There were, as said at the outset, two other defendants, Robison and Atkinson.   Robison answered denying every allegation except that whereby it is alleged that he, Robison, claimed some right, title and interest in the land.   He admits that, and then avers he "claims all the right, title and interests in said lands," wherefore he prayed to be discharged.   To his answer plaintiff replied by a denial and the averment that any interest owned by him was subject to the lien of plaintiff's deed of trust.

Atkinson answered denying all the allegations in the first count. By way of further defense thereto, he alleges that the deed of trust as well as the note referred to in the petition were made at a time Ranson Neff was involved in debt and owing a large sum to divers persons, among them defendant Atkinson; that the note and deed of trust were executed with intent to hinder, delay and defraud such creditors, including Atkinson; that the same was voluntary and without consideration; that presently Atkinson reduced his claims to judgments that are now unsatisfied and valid subsisting demands. The answer then proceeds as follows:

"That thereafter, to-wit, —— day of ——, 1901, under and by virtue of an execution issued under one of said judgments the lands now sought to be incorporated instead and in lieu of the lands said to be mis-described therein were duly levied upon and sold by the sheriff of DeKalb county, Missouri, at which said sale this defendant was the purchaser thereof; that thereafter, to-wit, on the —— day of ——, 19—, this defendant in good faith, relying upon his title and without knowledge or information whatever concerning the alleged mistake in said trust deed, did, by a general warranty deed sell and convey said land to his codefendant, Joseph Robison, by which said warranty deed last aforesaid this defendant covenanted that he was seized of an indefeasible estate in said land and covenanted that he would warrant and defend the title to the same against all persons whomsoever. That the attempt to reform said trust deed is in furtherance of the attempt to hinder, delay and defraud this defendant.

"And for further answer and defense this defendant says that the plaintiff has been careless and negligent, and has delayed an unreasonable length of time since the execution of said trust deed, and the note secured thereby, to have the same reformed, and ought

to be and is in equity and good conscience estopped as against this defendant from having said reformation made as prayed.

"Defendant for answer to the second count of plaintiff's petition denies each and every allegation and statement therein contained.

"And the defendant further answering states and says: That the judgments held by him against the said Ransom S. Neff are unpaid, and said defendant prays the court to revive the lien of said judgment now held by him against the said Ransom S. Neff, and that the same may be so revived as to constitute a lien against the property of the said Ransom S. Neff from this date.

"Wherefore, the defendant prays the court for a revivor of his judgment due him from Ransom S. Neff. Defendant says that by reason of the premises aforesaid, plaintiff should not be permitted to have said trust deed reformed."

To that answer plaintiff replied denying all its allegations, and then averring that defendant did not acquire title by said judgment and pretended sale; that the sale is void; that the judgments referred to were not liens upon the land; that plaintiff's deed of trust is superior and prior to any such judgment liens, and should be declared a first lien. The replication then goes on to bring into the paper controversy for the first time a sale made on the "—— day of May, 1909." (As there were several sales made on the Atkinson judgments, the significance of the allegation in the replication regarding the sale in May, 1909, will be seen when we come to the decree which set aside that sale with the others.) In relation to the sale of May, 1909, the replication states as follows:

"This plaintiff further answering [sic] says that on the —— day of May, 1909, when said lands were pretended to be sold under execution on said defendant Atkinson's said pretended judgment, defendant At-

kinson, at the time, through his agents and attorneys, had notice of the claims of plaintiff in and to the said lands; and at the time of said sale and a long time prior thereto defendant Atkinson was and had been a defendant in this case, and knew all about the claims of plaintiff in the premises. And well knowing that plaintiff had and of a right ought to have a first lien upon said lands, and intending to divert the plaintiff out of her just lien and claims to said lands, the said Atkinson pretended to have said lands sold, and pretended to become the purchaser thereof, well knowing the claims of this plaintiff.''

It is next averred that if Atkinson has any right, title or interest in the real estate it is subject to the lien of plaintiff's deed of trust; wherefore, plaintiff renews her prayer for judgment.

At a certain time defendant Atkinson withdrew his answer and demurred for that (1) there was an improper joinder of parties, (2) the petition was multifarious and (3) the first count thereof did not state facts sufficient to constitute a cause of action.

This demurrer was overruled and his answer refiled.

At the trial there was evidence for plaintiff tending to prove that Ransom and Sarah Neff, being indebted to plaintiff, increased their loan under an agreement with her to at once secure the whole debt on tract one by a deed of trust; that, to carry out that agreement, they executed the deed of trust on the date alleged thinking it conveyed tract one, and plaintiff at once received it thinking it conveyed tract one, such deed being spread of record; that afterwards it was discovered that the land description was wrong; that at the same time they executed their note to plaintiff for $300, due in three years with eight per cent compound interest from date, to-wit, July 15, 1899; that said note is due and wholly unpaid, principal and interest; that in May, 1905, Sarah and Ransom Neff con-

veyed the land (both tracts one and two) subject to incumbrances, to their son and codefendant, Elmer Neff, by warranty deed, consideration expressed $300; that such deed was at once spread of record; and that Ransom and Sarah held title as husband and wife at the date of the execution of the note and deed of trust to plaintiff.

On behalf of defendants there was evidence tending to show that at the time last above and continuously thereafter Ramsom Neff was indebted to others besides plaintiff, among them defendant Atkinson; that Atkinson's claims were merged in a judgment and remained unpaid, the Neffs presently leaving the State; that no cash consideration was paid by Elmer Neff for his conveyance, in 1905, or since; that he gave his note in pay for $300, but it was not to be paid at all unless he secured title; that Atkinson recovered three judgments against Ransom Neff in Buchanan county—one before a justice in March, 1900, transcribed to the Buchanan Circuit Court and thence to the circuit court of DeKalb, and duly filed in the proper offices; another before a justice of Buchanan county, also dated in March, 1900, for $267.15. A transcript of this judgment was presently filed in the offices of the clerks of the circuit courts of Buchanan and DeKalb counties respectively.

(Note: As we gather this latter is the judgment on which execution issued and sale was made, referred to in Atkinson's answer as made on the ''—— day of ——, 190—.'')

In July, 1902, Atkinson and another recovered judgment against Ransom Neff for $928.41 and costs in the Buchanan Circuit Court, of which judgment Atkinson presently became sole owner by assignment; that in May, 1900, execution issued on the justice judgment last above from the office of the clerk of the circuit court of DeKalb, levy was made on tracts one and two, but the levy on tract one was by the same misde-

scription as in plaintiff's deed of trust; that at a sale under that levy Atkinson purchased in June, 1900, and received a sheriff's deed; that in October, 1900, defendant purchased at another execution sale under the same justice judgment and received another sheriff deed.

(Note: The execution supporting this last sale and sheriff's deed was also issued from the office of the clerk of the circuit court of DeKalb and the deed and levy correctly described both tracts one and two.)

That in October, 1900, Atkinson sold and conveyed to (and in March, 1902, took a reconveyance of from) one Jackson both tracts; that in February, 1903, Atkinson sold and conveyed both tracts to his codefendant Robison by warranty deed, duly spread of record, consideration $900; that after this suit was brought, to-wit, in May, 1909, Atkinson bought both tracts one and two at another execution sale and received a sheriff's deed, three executions directed to the sheriff of DeKalb issuing from the office of the clerk of the circuit court of Buchanan severally on the three judgments hereinbefore mentioned and the levies being made upon both tracts as the property of Ransom Neff. (Note: This is the execution sale mentioned in plaintiff's replication to Atkinson's answer.) It appears furthermore that Robison took possession.

There was no evidence tending to show any fraud or collusion between plaintiff and the Neffs; she seems to have acted throughout in good faith.

At the close of the evidence, a demurrer thereto was offered, overruled and an exception saved.

The court, having taken time to consider, presently decreed, *inter alia* (so far as pertinent to any question here affecting the appealing defendants) as follows: That because of a "mutual mistake" plaintiff's deed of trust be reformed so as to include tract one by its correct description (setting it forth); that it is a first lien; that, as reformed, it be foreclosed; that Elmer Neff took title in fee to both tracts, under his convey-

ance from his parents in 1905 subject to the lien of the deed of trust on tract one and "free from all claims of the other defendants herein;" that the two sheriff's deeds to Atkinson bearing date in 1900 be annulled and for naught held and that he take no interest or estate thereunder; that the sheriff's deed bearing date in May, 1909, be similarly annulled and that Atkinson take nothing thereunder; that the warranty deed from Atkinson to Robison, describing it, "be [quoting] set aside, annulled, cancelled and for naught held, and that said Joseph Robison take nothing under or by said warranty deed." The costs were adjudged against defendants Atkinson and Robison.

The points raised by appellants' counsel are, to-wit:

(1)   The first count of the petition did not state a cause of action.

(2)   The demurrer to the evidence laid.

(3)   Conceding for argument's sake, that reformation of the deed of trust was well enough, yet the decree in favor of *Elmer* Neff cannot stand (and herein of the last sheriff's sale and the deed from Atkinson to Robison).

(4)   It was error to adjudge all the costs against appellants.

(5)   And in not reviving the lien of Atkinson's judgments.

I.   *Of the sufficiency of the first count of the petition.*
There is no direct allegation in such count that the mistake in land description was a "mutual" mistake.   Moreover, the pleader laid some stress on the "error" of the draftsman of the deed and did not aver the draftsman was the agent of grantors and grantee in writing the deed wherefrom mutuality in such error springs.   Hence, appellants' counsel say, the first count of the petition is bad and the demurrer good.

(a) That a mistake, cognizable in equity as sub-
ject to correction by a decree, must be a *mutual* mis-
take, is a doctrine resting on the soundest premises.
Thus, at root, a contract involves the primary and es-
sential concept of a meeting of the minds
<span style="margin">Mutual<br>Mistake.</span> of the contracting parties—the *aggregatio
mentium* of the books on contracts. With-
out such meeting the instrument is unilateral and there
is no bilateral contract. Now, in reforming contracts
equity does not make new ones. It lets the parties
make their own. Its function is to find out if the con-
tracting parties' minds met on a given substantial
proposition (that is, it searches out the mutuality)
and if by mistake of both the contract asserts to the
contrary or is silent, it reconstructs its terms so as to
speak the truth. When it has done that the resulting
product is the real contract the parties themselves
made, and not one the chancellor accommodatingly
made for them. The philosophy of the matter is no-
where better expressed than by GAMBLE, J., in an early
case (Leitensdorfer v. Delphy, 15 Mo. l. c. 167), thus:
"It is not necessary, in order to establish a mistake
in an instrument that it shall be shown that particular
words were agreed upon by the parties as words to be
inserted in the instrument. It is sufficient that the
parties had agreed to accomplish a particular object
by the instrument to be executed, and that the instru-
ment as executed is insufficient to effectuate their in-
tention. The power of a court of equity to reform an
instrument, which by reason of a mistake fails to exe-
cute the intention of the parties, is unquestionable. It
is not material, whether the instrument is an executory
or an executed agreement; nor is it material whether
the proceeding is directly by bill to correct the mistake
or the mistake is set up in the answer by way of de-
fense."

(b) Applying the principles just announced, it
could not well be held that a pleader must in set terms

and *ipsissimis verbis* plead a mutual mistake. If he set forth substantive facts by way of averments which necessarily mean mutuality of mistake that will be sufficient. The mere *name*, "mutual mistake," while commonly used in bills for reformation of mistake, is not indispensable in a bill if mutuality is fairly inferable from allegations made. [Meek v. Hurst, 223 Mo. l. c. 696.] Agreeable thereto is the statute making it our duty to construe pleadings liberally with a view to substantial justice between the parties. [R. S. 1909, sec. 1831.] The ultimate question is: What is a mutual mistake? Take an a-b-c case to illustrate. A pleader alleges that A agreed to sell to B and B agreed to buy from A a tract of land X. That in pursuance of that pact A attempted to convey X to B but by mistake inserted Y in the deed thinking it was X, and B by mistake, thinking Y was X, accepted the deed and paid the purchase money. Is not that a mutual mistake? We think so and are of opinion the first count by fair implication set forth an equivalent situation.

(c) Appellants' counsel seize hold of the allegation that the draftsman by error misdescribed the land. They say that, absent an allegation that the draftsman was the agent of both parties, it results that on the very face of the petition his error was not the mutual error of both. That proposition may be allowed as sound. [Meek v. Hurst, supra; Brocking v. Straat, 17 Mo. App. l. c. 305; Williamson v. Brown, 195 Mo. l. c. 330 et seq.; Benn v. Pritchett, 163 Mo. l. c. 571 et seq.]

But that concession does not reach the whole case. Here the pleaded error of the draftsman may be viewed as merely supplementary to the mutual mistake, impliedly alleged, of grantors and grantee. Redundancy may clog or obscure, but without more does not vitiate a pleading, and we think the allegation of the draftsman's error was in the nature of redundancy. We are

glad to be able to take that view of it; for the plain justice of the case runs for plaintiff in a strong current. Appellants' pleaded case, from the angle of fraud on her part, has no foot to stand on.

(d)   In leaving the question of demurrer we make some further remarks.   It will be observed that besides being a demurrer to the first count on the general ground that it did not state facts sufficient to constitute a cause of action, the whole petition was struck at as multifarious and because of a misjoinder of parties. As to the last two features they seem to be abandoned, if we read briefs aright.   But whether we do or not is of no consequence; for when appellants demurred on those grounds and refused to stand on their demurrer, but pleaded over, taking issue on the facts, they waived those grounds effectually.   For an appellate court to tread back in a case in search of reversible errors, and spy out some abandoned ground, would be but to deal in mere mint and anise and cummin and neglect the weightier matters of the law.   We have constantly construed section 1800, Revised Statutes 1909, in connection with its cognate section 1804 as forbidding us to do that.

*Demurrer: Waiver.*

The demurrer to the petition was well ruled.

II.   *Of the demurrer to the evidence.*

Under this head counsel argue that the testimony did not show a mutual mistake, but we cannot follow that lead, because, as we read the record, it shows such mistake with emphasis.   The court found the mistake was mutual.   The grantors in the trust deed admit they made the mistake.   The beneficiary in the deed, plaintiff, testifies she was to receive a deed to tract one.   All hands agree that by inadvertence there was a misdescription in that particular.   We rule the point against appellants.

*Mutual Mistake.*

III.  *Can the decree in favor of Elmer Neff stand
(and herein of the last sheriff's deed and of the war-
ranty deed from Atkinson to Robison)?*

It will be observed the decree set aside the sher-
iff's deed made subsequent to the bringing of this suit
and annulled the warranty deed made by Atkinson to
Robison in 1903 subsequent to the first two sheriff's
sales.  It also decreed that Elmer Neff, by his deed of
May, 1905, from his parents, acquired the whole title
subject to plaintiff's reformed deed of trust.  If the
decree had been simply directed to reforming plain-
tiff's deed of trust and clearing away all claims by any
defendant standing in the way of her title under that
deed of trust, no fault could be found with it, but it
went much beyond and undertook to settle the rights
of Elmer Neff as against his codefendants, Robison
and Atkinson, and it cleared up his title as against
them, and not only so but, as pointed out, it cut up the
warranty deed Atkinson made to his codefendant Rob-
ison, root and branch.  If the court under the plead-
ings had the power to do this latter thing as between
Robison and Atkinson, then Robison is bound by the
decree and if he seeks recourse over against Atkinson
on his covenants of warranty he will be met by a decree
dissolving those covenants and cancelling his deed in
a suit to which he was a party.  We have come to the
conclusion that the decree went too far in these par-
ticulars and must be modified, because:

(a)  In the first place, there was nothing in plain-
tiff's bill demanding a clearing up of Elmer
Neff's title except in so far as it was neces-
sary to or an antecedent of the reformation
of the deed of trust.

**Decree:
Outside
of Issue.**

So there were no cross-actions or cross-bills filed
as between the codefendants and no averments in any
answer which by the most liberal intendment could fill
the office of such cross-action as between the answer-
ing defendants.  We heretofore set out the substance

of all the answers for the purpose of demonstrating so much as that. A decree must respond to the issues. Here there were no issues made on the validity of Elmer Neff's title as between him and his codefendants. To decree outside of the issues is error: [Spindle v. Hyde, 247 Mo. l. c. 51 et seq., and cases cited.]

(b)  In the next place, if there had been cross-actions or cross-bills as between codefendants they must be germane to plaintiff's bill and in the nature of a defense in order to give jurisdiction to found a decree thereon.  [Fulton v. Fisher, 239 Mo. l. c. 130 et seq.]

(c)  If we turn to old section 650, now (as amended) section 2535, Revised Statutes 1909, and try to work out a theory on which those parts of the decree, directed to clearing up the title of Elmer Neff as between him and his codefendants, may stand, the result is the same. Neither of those sections contemplated that the chancellor should go outside the issues in his decree. Both of them are to be administered in conformity to the Code of Civil Procedure, that is, within the lines of scientific pleading and practice. [R. S. 1909, sec. 2536, formerly Sec. 651.]  Any other view would make of that remedial act a fruitful womb of confusion and wrong.

(d)  In so far as the decree out and out annulled the deed from Atkinson to Robison, as between them, it went too far.  No issue demanded such decree.  It would have been enough to have held that whatever rights, if any, Robison had under that deed (as between him and Elmer Neff and as between him and Atkinson) were subject to plaintiff's reformed deed of trust.

In saying so much as that we are not to be taken as holding that Atkinson's first two sheriff's deeds, on which Robison may in part rely to support his title

under Atkinson's deed to him, were valid. All parties agree (one side by assertion, the other by concession) that they were afflicted with a fatal infirmity in that the sales supporting them were not made on executions issued by the clerk of the circuit court of Buchanan county (R. S. 1909, sec. 2166), but on executions issued from the office of the clerk of the De-Kalb Circuit Court. Obviously the sheriff held no legal authority to make those sales, and the deeds conveyed nothing. *Ex nihilo nihil fit.*

(e) The holding just made brings us to the last sheriff's sale and deed, made on three executions issued by the right authority—on the judgments mentioned against Ransom Neff and at which sale Atkinson bought under the hammer and received a deed. This sale and deed were subsequent to the institution of this suit, and got into the case only through plaintiff's replication. It had no place there and no issue was tendered thereon. Evidently it could not affect plaintiff's right to reformation; for at that time the judgments were not liens on tract one, there was no fraud in her deed of trust making it subject to a creditor's bill, and when Atkinson bought and took his deed, he had notice of plaintiff's claim. So that, if the question was only between plaintiff and Atkinson we would not meddle with the decree on that score, because that phase of the decree would not affect the merits an iota on such view of it. But the scope of the decree being so wide and deep-going as to adjudicate Elmer Neff's title as against Atkinson and Robison, another question springs. We are not prepared to say that so much of Elmer's title as was derived from his father as tenant by the entirety, is good as against the creditors of his father. We say neither aye nor nay thereon. What we do say is that on the pleadings in this cause such fact was not at issue and the decree in that particular is not responsive to the pleadings.

IV. *Of costs.*

It is argued the decree is erroneous in assessing the costs against appellants.

No complaint of that sort was made in the motion for a new trial or in arrest. We put that assignment of error to one side.

V. *Of the revivor of Atkinson's judgments.*

Finally it is assigned for error that the court did not revive Atkinson's judgments. The point is without any merit at all for more reasons than one. Judgments are "revived" in the court rendering them, and on *scire facias* (R. S. 1909, secs. 2125 to 2132 inclusive), and not in other courts and on other process.

Appellants cite us to Revised Statutes 1909, section 2535, formerly section 650. That section on quieting titles seems indeed an *omnium gatherum,* a catchall, a "shotgun" instrument. But it cannot be held to serve the purposes of reviving or continuing the liens of judgments when such liens have expired (as here) or are about to expire by effluxion of time. Nothing in its language indicates the lawmaker by that statute intended to provide such remedy.

The decree is reversed and the cause remanded with directions to enter a decree in accordance with the views herein set forth. All concur.

## CONCURRING OPINION.

WOODSON, P. J.—I concur fully in the opinion in this case, except as to what is said in regard to the case of Fulton v. Fisher, 239 Mo. 116.

While that case announces a correct principle of law, yet it was clearly misapplied in that case; but not in this.