WILSON S. CHENEY, and others,

*vs.*

LEROY P. GOODWIN, and others.

York.   Opinion March 5, 1896.

*Voluntary Associations.   Contribution.   Equity.   Practice.*

To hold persons liable to contribution in equity as members of a voluntary unincorporated association for debts and expenses authorized at meetings of the association, it should appear that the association is one with a determinate membership differentiated from the general public, and that the meetings authorizing the expenditure were limited in participation to such members.   *Held;* that in this case neither condition is shown.

A bill in equity against thirty-four respondents to enforce thirty-four individual and separate though similar contracts is bad for multifariousness.

ON REPORT.

This was a bill in equity, heard on bill, answers and proofs, in which the complainants, being members of a committee who

claim to have acted as the agents of the respondents for the purchase of a lot and erection of a shoe shop thereon in the village of Springvale, sought relief by contribution and account for money advanced and debts contracted in the purchase of the lot and the erection of the shop, over and above the amount of the fund subscribed for that purpose by the respondents and others, and also praying for an adjustment of all the affairs of the enterprise,— the collection of unpaid subscriptions of parties, the restraint of further vexatious litigation at law and such other relief as equity might find necessary, etc.

The case is stated in the opinion.

The following is the material and important allegation in the bill : " Seventh — That the defendants participated in said meet-ings, assented to said votes, were subscribers to the fund and pledges raised on said subscription book, and became by these and other acts in furtherance of said objects, members of said voluntary association, known as the ' Springvale Industrial Asso-ciation,' and with the complainants and one Narcissa J. Pelletier, then of Sanford, now of St. Anne Lapocatiere, in the Province of Quebec, and said Edmund Goodwin, now deceased, composed and formed said association and became liable for the indebted-ness incurred by the same."

*Samuel M. Came, B. F. Hamilton and B. F. Cleaves*, for plaintiffs.

*Geo. F. Haley, A. Low and Leroy Haley, J. W. Symonds, D. W. Snow and C. S. Cook*, for defendants.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, WISWELL, JJ.

EMERY, J. After reading the mass of conflicting and con-tradictory testimony contained in this printed record of nearly six hundred pages and the numerous exhibits, we are not satisfied that the plaintiffs' essential propositions of fact are established by any fair preponderance of the evidence. This result would justify the dismissal of the bill without further remark, since reasons for conclusions of fact are not expositive

of the law. But inasmuch as no reasonable inference from the evidence supports the legal position taken by the plaintiffs in their bill, our judgment can be rested as well on that conclusion.

Assuming the material facts as favorably for the plaintiffs as the evidence will permit, the statement is substantially this: In the summer of 1889, some active, public spirited citizens of Springvale became inpressed with the idea that the material prosperity of that village would be increased by bringing there the business of the E. & A. Mudge Shoe Company from Rochester, N. H. A self-constituted committee of citizens invited the officers of the shoe company to a conference, and finally procured from them a memorandum of the terms on which they would transfer their business to Springvale. These terms, in brief, were the construction of a specified shoe factory building by the citizens, on a selected lot to be purchased by them, and then the gift of the land and building to the shoe company,— the latter to contribute $5000 toward the cost.

An informal public meeting of the people of Springvale was then called and held at the town hall August 12, 1889. At this meeting the attendance was large and general,— a chairman and secretary were chosen,— the proposition of the shoe company was discussed,— and a soliciting committee was chosen to procure subscriptions for the purpose of meeting the shoe company's proposition. The meeting then adjourned to the next Saturday evening. At the adjourned meeting a committee was chosen to procure similar subscriptions in Portland.

The soliciting committees immediately prepared a subscription paper with a heading reciting the proposition of the shoe company, and concluding with the following contract of subscription,— "Now, in consideration of said offer and for the purposes of carrying the same into effect, we the undersigned do hereby agree to pay to a person to be hereafter elected by the subscribers hereto, as treasurer to receive and collect the amount of money hereto subscribed, the sum set against our respective names, at such time or times as the subscribers hereto direct. Dated at Springvale, this 14th day of August, 1889." This subscription paper was industriously circulated in Spring-

vale and Portland and two hundred signatures, more or less, were obtained for sums aggregating about $8000.

This sum of $8000, was not considered sufficient for the purpose, and another general meeting was informally called and held at the town hall on August 23, and was numerously attended. At this meeting the whole matter was talked over, and an effort was made to increase the subscriptions to $10,000. Speeches were made, and the paper was passed round in the meeting for such an increase in the subscription. At length the soliciting committee reported that the desired $10,000 could be relied upon as forthcoming. It was then voted to accept the proposition of the shoe company, and a committee was chosen to notify the shoe company of this action of the meeting. It was further voted "to stand back of the committee." The meeting then adjourned to August 24th.

At the adjourned meeting, the committee of notification reported that they had notified the shoe company as instructed, and that the officers of the company would shortly come to Springvale to prepare and sign a draft of the contract. This report was accepted. It was then voted to give to the association, or enterprise, the name of "The Springvale Industrial Association." An executive committee was chosen and empowered to meet the officers of the shoe company, bind the agreement with them, and carry the same into effect. It was further voted "to stand behind the committee." This meeting adjourned without day.

At all these meetings many signers of the subscription paper were present and took part, but it does not appear as to any meeting, that the call, the attendance, the discussion, or the voting was limited to such signers. They were all meetings open to participation by the general public. All the votes were passed by general consent without division.

The executive committee, chosen at the last meeting, began work at once, — signed the contract with the shoe company (in which they described themselves as acting as a committee of citizens chosen by the subscribers to the fund,) — purchased the lot, — built the factory, and conveyed the whole to the shoe

company, which thereupon transferred its business to Spring-
vale as agreed. The committee transacted most of the business
in this connection under the name of the " Springvale Industrial
Association." Several of the subscribers to the fund, including
some of the defendants, actively co-operated with the committee.

The cost of the land and buildings exceeded the amount sub-
scribed, and the committee was unable to collect all that was
subscribed. There resulted a deficit of about $4000, for which
the members of the committee were personally responsible.
Efforts were made to procure contributions from the former
subscribers and the general public to relieve the committee from
this deficit. Two public meetings, of a character in call and
attendance similar to those in August, were called and held in
November and December to arouse public interest, and induce
further contributions. All these efforts failed however, and the
members of the committee finally brought this bill against
thirty-four signers of the original subscription paper to compel
a contribution. Some of these defendants were active partici-
pants in the meetings of August and in other ways pushed along
the enterprise, but it does not appear that all of them were
present at any meeting, or did more than sign the subscription
paper.

The only position taken by the plaintiffs in their bill, as the
basis of their claim for contribution from these defendants, is
that stated in the seventh paragraph of the bill. It is there
stated that the plaintiffs and defendants composed and formed a
voluntary association known as the "Springvale Industrial
Association," and as members thereof became all liable for the
indebtedness of the association thus incurred by the executive
committee, and also liable to contribute among themselves for
such indebtedness.

A person may become a member of a voluntary unincorpor-
ated association, and make himself liable to third parties upon
contracts authorized by a vote of the association within its scope
at a meeting of the association, even though he did not vote to
give such authority, or did not attend the meeting. In winding
up the affairs of such an association, each member may become

liable to make contributions to equalize among the members the losses of the association. Masonic Lodges, Agricultural Societies Fire Companies, Boards of Trade, etc., are familiar instances of such associations.

But, in all such cases, it will be found that the association had a definite and determinate membership,— that there was a clear line of demarcation between members and non-members,—that there was an organization which differentiated the association from the people at large. Again, in all such cases the authorizing vote was passed at a determinate meeting of the association, called and held as such, and limited in participation to members of the association. In the most extreme case we have found, that of a college class ( *Wilcox* v. *Arnold*, 162 Mass. 577,) both of these conditions of liability were fulfilled. So also in *Robinson* v. *Robinson*, 10 Maine, 240, where the personal liability was merely suggested. These conditions are in reason, as well as authority, essential to personal liability as a member of a voluntary unincorporated association.

Recurring now to the facts of this case, neither of these conditions appears to be fulfilled. The signing the subscription paper did not constitute the signers an association. There is no contract of association in that paper. Each subscriber only promised to pay a fixed sum of money to such person as a majority of the subscribers should appoint to receive it, and at such times as a majority should fix. There is no stipulation for any other individual or collective action by the subscribers. Nor did the votes of the various meetings constitute an association with a determinate membership. No criterion of membership was established. Not all the signers of the subscription paper were thereby made members, since many did not attend, and there was no stipulation in their subscription for forming such an association. On the other hand, membership was not limited to signers of the subscription paper. It does not appear that the signers present at any meeting were even a majority of those present and participating in the meeting.

But, if the first condition was fulfilled, the second was not. If it could be correctly said that an association with a determinate

membership was formed, there was no determinate meeting of that association which could pass votes binding on its members. None of the calls were for an association meeting. All were to the public generally for a public meeting. Participation in none of the meetings was limited to members of the association. Discussion, voting and all other action could be, and, so far as appears, was shared by other persons. The votes of such meetings cannot bind individuals as members of an association.

It must be apparent that upon the facts, these defendants cannot be held liable to contribution as co-members with the plaintiffs of a voluntary unincorporated association. No other ground is pointed out, upon which this bill for contribution can be sustained against these defendants. Either defendant may have made himself liable to pay fixed or proportional sums to the plaintiffs by his individual action, but such liability would be individual, and distinct from that of every other defendant.

A single bill in equity against all the defendants to enforce thirty-four separate individual contracts, would be multifarious and unsustainable.

> *Bill dismissed. One bill of costs only against the plaintiffs.*