## AMERICAN CENTRAL INS. CO. et al. v. HARMON KNITTING MILLS, Inc.

### No. 4243.

Circuit Court of Appeals, Seventh Circuit. March 18, 1930.

Rehearing Denied April 8, 1930.

Robert J. Folonie, of Chicago, Ill., for appellants.

W. Edgar Sampson, of Springfield, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge.

Appellee brought this suit to recover a fire loss from appellants, fire insurance companies, who defended on the ground that a court of equity did not have jurisdiction of the cause and on the further ground that the liability was extinguished because of false and fraudulent proofs of loss, and on the ground that the damages allowed were excessive.

At the threshold we are confronted with the objection to the jurisdiction of the court.

There were eight outstanding insurance policies issued by eight different companies on the property destroyed or damaged by the fire. One company adjusted its loss. Each policy was evidently a standard policy and contained this provision: "This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property."

Each policy also contained a clause or clauses to the effect that the insurer shall be liable for no greater portion of such loss than the amount thereby insured bears to 80 per cent. of the actual cash value of the property described at the time of the loss. None of the defendants sought to limit their liability by reason of this last-named clause. It was contended, however, and is earnestly argued here, that the total amount of insurance exceeded appellee's total loss. Each policy also contained provisions to the effect "that the insurer shall not be liable beyond the actual cash value of the property at the time of the loss, and that the loss or damage shall be ascertained or estimated in accordance with such actual cash value with proper deduction for depreciation, however caused." Each policy also provided for immediate notice of any loss by fire and for the making of a sworn statement in the nature of a proof of loss within sixty days after the fire, and each policy designated the matters to be contained in such proof of loss. Each policy also contained a provision that it should be void if the insured concealed or misrepresented in writing or otherwise any material fact or circumstance concerning the insurance or the subject thereof, or in case of any false swearing by the insured touching any matter relating to this insurance or the subject thereof whether before or after the loss.

It will thus be seen that the instant suit involved the recovery of damages against seven defendants; that liability was predicated upon contracts almost identical in language; that the conditions precedent to recovery were the same in each case; and that the several liabilities were dependent upon the relation of the total loss to the total amount of insurance written.

Will equity assume jurisdiction upon this showing? The jurisdiction of a court of equity over suits of this character has been the subject of considerable judicial and text-book discussion. There exists some contrariety of opinion. Sustaining jurisdiction, see Smith v. Allemannia Fire Insurance Co., 219 Ill. App. 506; Fegelson v. Niagara Fire Ins. Co., 94 Minn. 486, 103 N. W. 495. Contra, see Scruggs & Echols v. American Cent. Ins. Co. (C. C. A.) 176 F. 224, 36 L. R. A. (N. S.) 92; Scottish Union & Nat. Ins. Co. v. J. H. Mohlman Co. (C. C.) 73 F. 66; Mechanics' Ins. Co. v. C. A. Hoover Distilling Co. (C. C. A.) 173 F. 888, 32 L. R. A. (N. S.) 940; Rochester German Ins. Co. v. Schmidt (C. C. A.) 175 F. 720. See footnote for somewhat analogous cases.[1]

[1] For appellants, see Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380; Kelley v. Gill, 245 U. S. 116, 38 S. Ct. 38, 62 L. Ed. 185; United States v. Bitter Root Development Co., 200 U. S. 451, 26 S. Ct. 318, 50 L. Ed. 550; Washington County v. Williams (C. C. A.) 111 F. 801, 813; Illinois Steel Co. v. Schroeder, 133 Wis. 567, 113 N. W. 51, 14 L. R. A. (N. S.) 239, 126 Am. St. Rep. 977; Tribette v. Ill. Central R. Co., 70 Miss. 182, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642; Southern Steel Co. v. Hopkins, 174 Ala. 465, 57 So. 11, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692; Barston v. Mingo Drainage Dist. (D. C.) 264 F.

The case of Smith v. Allemannia Fire Insurance Co., 219 Ill. App. 506 squarely supports such jurisdiction. Appellee argues that, inasmuch as the insurance policies were issued on property in Illinois, by companies licensed to do business in that state, this decision should terminate our study of this phase of the case. But the question of equity jurisdiction is one which the federal courts must determine for themselves, and they cannot be relieved of this duty by the holding of the courts of the state wherein the suit is brought. Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228; Ætna Life Ins. Co. v. Roewe (C. C. A.) 38 F.(2d) 393.

If equity has jurisdiction of this cause, it is because it will avoid numerous actions at law. But something more is required than the avoidance of a multiplicity of suits. There must be a common interest existing among the individual defendants and between them and the plaintiff in order that a court of equity may interfere. Section 267, Pomeroy, Equity Jurisprudence (4th Ed.). This common interest exists in the present suit, if at all, because of the similar provisions in all of the insurance policies and particularly because of that provision heretofore quoted which makes each appellant liable for only its proportion of the total loss. Is this common interest of such a nature, extent, and object, as to justify the assumption of jurisdiction by a court of equity? We think it is. Milwaukee Mechanics' Ins. Co. v. Ciaccio (C. C. A.) 38 F.(2d) 153. All the defendants were interested in the loss, the determination of which constituted what might be called the gist of this suit. It is true, each cause of action is based upon a contract, but liability is measured by the insured's loss rather than by the amount of the policy. In fact, liability under the contract is dependent upon the amount of all

224; Carey v. McMillan (C. C. A.) 289 F. 380; Tompkins v. Craig (C. C.) 93 F. 885; Doggett v. Hart, 5 Fla. 215, 58 Am. Dec. 464; Murphy v. City of Wilmington, 6 Houst. (Del.) 108, 22 Am. St. Rep. 345; Fulton v. Fisher, 239 Mo. 116, 143 S. W. 438; Peniston v. Hydraulic Press Brick Co., 234 Mo. 698, 138 S. W. 532; Cheney v. Goodwin, 88 Me. 563, 34 A. 420.

For appellee, see North Am. Ins. Co. v. Yates, 214 Ill. 272, 73 N. E. 423; Wyman v. Bowman (C. C. A.) 127 F. 257; Montgomery Light & Power Co. v. Charles (D. C.) 258 F. 723; Lake Charles Milling Co. v. Rice Growers' Ass'n (C. C. A.) 295 F. 246; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Wilson v. Illinois Southern R. Co., 263 U. S. 574, 44 S. Ct. 203, 68 L. Ed. 456.

the outstanding insurance as well as the amount of the loss. How is the amount of outstanding insurance to be determined? And how can one company's *proportion* be ascertained without first ascertaining the total amount of insurance?

*Fraudulent Statement in Proof of Loss.*—The evidence on this issue was somewhat conflicting. One witness, whose evidence was most important, gave testimony on the witness stand which was at variance with his sworn statement made before trial. Appellee's proof of loss was based largely upon the estimates given by this witness. The District Judge, appreciating the importance of this testimony, gave written expression of his views, and accepted, as the witness' best judgment of the loss sustained, the evidence given on the trial, which was favorable to appellee. Supported by this statement, we have no hesitancy in rejecting appellants' urge to the effect that there were such false statements made in preparing and submitting the proof of loss as to defeat a recovery in this suit.

Before an overvaluation of the loss appearing in the proof of loss will defeat recovery, it must be shown that insured acted with fraudulent intent. National Fire Insurance Co. v. Renier (C. C. A.) 22 F.(2d) 671; Commercial Insurance Co. v. Friedlander, 156 Ill. 595, 41 N. E. 183. An insured might well rely on the statement furnished it by an outsider, qualified to speak, notwithstanding such expert overestimated the amount of the loss. To illustrate, assume A lost, through a fire, certain works of art such as statuary, which could not be replaced, and for which there was a decidedly limited market. In order to make proper proof of loss, it would be natural for A to consult a sculptor or dealer in such art products. If A relied on such statements, and made proof of loss accordingly, he would not be denied recovery simply because the dealer grossly overstated the true value of the property destroyed. So here appellee did not know the value of the machines destroyed by the fire. There was a decidedly limited market for such property. In fact, the reproduction cost was perhaps the most satisfactory way of ascertaining its value. Appellee therefore sought the machinist who had a large part in the manufacture and final adjustment of the machines destroyed. Upon his estimates of the amount of the loss, appellee relied in making its proof of loss. It did not know when it made its proof of loss that the appraiser, upon whose ap-

praisal it relied, had or would make an appraisal for the insurer also and place a value on the same property less than one-third that given to the appellee.

*Amount of Loss.*—Appellee contends that there is some evidence to support the finding of the court in its favor to the effect that the appellee's loss was $79,857.75, and this finding is therefore binding upon us. But this suit is one in equity, and we are required to examine the evidence to ascertain, not whether there is some evidence to support the court's finding, but whether the finding is not contrary to the clear weight of the evidence. True, this court must give and does readily give much weight to the District Court's finding upon this disputed issue. However we are not required to accept it in the same sense that we accept the verdict of a jury in an action of law respecting an issue over which there is a dispute.

In American Rotary Valve Co. v. Moorehead, 226 F. 202, 203, this court said: "Under the new equity rules, as well as under the old ones, the reviewing court has the right, and owes to itself and to the parties the duty, of trying the questions of fact de novo. Under the old rules, the findings of the trial court were entitled to be treated as very persuasive, and such findings were not to be disturbed, unless it appeared quite clearly that the trial court had either misapprehended the evidence or had gone against the clear weight thereof. We conceive that the new rules have made no change in those respects."

After a most careful examination of all of the evidence, we are convinced that a material reduction must be made in the amount of the loss and therefore in the amount of recovery. The total amount of insurance written on all of the property was $81,000. Of this, approximately $61,000 covered "the machinery," $1,000 the "fixtures and furniture," and $19,000 the "merchandise and material." There is no controversy over the extent of the loss on the furniture and fixtures. It exceeded $1,000. As to the loss on the merchandise and material, the parties also agree as to the amount—$16,983.09. The dispute arises over the value of "the machinery" which was damaged or destroyed.

Each policy provided that the insurer "shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damages shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused."

The witness Walter, upon whose testimony appellee must rely to support its position, submitted a statement to the court wherein he set forth his estimated cost of constructing the ten knitting machines. He divided his statement into three subdivisions: (a) Constructing and assembling $45,581.00; (b) adjusting and finishing, $31,731.75; (c) standard machinery, $2,545.00—total, $79,857.75.

Under the first two subdivisions, Walter divided his estimate into "cost of material" and "labor." It is in reference to the latter item, labor, that Walter's evidence fails to persuade. Under "Constructing and Assembling"—"Labor," the following statement appears:

| | |
|---|---|
| 7 machinists, 9 hours per day, 26 days per month, and 10 months, or 16,380 hours in all, @ $2.50 per hour | $40,950.00 |
| Draftsman—1 month | 600.00 |
| Pattern maker—1 month $2.00 per hour, 26 days | 468.00 |
| Total labor | $42,018.00 |

Under the heading "Labor" for "Adjusting and Finishing" the following statement appears:

| | |
|---|---|
| Adjusting by expert knitter two weeks to each of 10 stitches at $150.00 per week making $3,000.00 for each machine, and for ten machines | $30,000.00 |
| Total adjusting and finishing | $31,631.75 |

It is undisputed that there was some depreciation in the value of the machinery. Walter made no deduction for depreciation in his estimates, nor did he allow, in this statement, anything for salvage. If the number of hours necessarily required in "constructing and assembling" and in "adjusting and finishing" the machines be accepted as correct, it is nevertheless impossible, in the face of the evidence, to accept the price put upon such labor.

In attempting to reconcile the evidence of this witness with the evidence of numerous

manufacturers and employers of labor, it must be borne in mind that appellee's witness made a sworn statement before trial, material extracts of which are herewith set forth:

"On the 21st day of May, I did visit Springfield and made a most thorough, careful and expert examination of the machines as they existed after the fire, and from this examination and my experience in the knitting machine business, I am able and have formed an opinion of the replacement value of these machines and each of them. My examination developed that none of the machines had been totally destroyed.

"I made a very careful and expert examination as to the replacement value of these machines and in my opinion they can be replaced and that said replacement value of these machines new would be not to exceed $2,500.00 per machine. I further made a careful expert examination as to the value of these machines and in my opinion they can be replaced and that said replacement value of these machines new would be not to exceed $2,500.00 per machine. I further made a careful expert examination as to the value of these machines as they stood immediately before the fire struck them, and in my opinion, from such an examination, these machines, and each of them, were worth, at the time of the fire, not to exceed $2,000 per machine.

"None of these machines were so totally destroyed by the fire as to prevent a competent draftsman from making copies and drawings of parts and each of the parts from which he would readily be able to reproduce each of these machines as they stood immediately before the fire. I would personally be able myself from what is left of these machines to reproduce and put in working order each of these machines as they were immediately before the fire and it would be readily apparent to any competent draftsman that none of these machines have been so damaged or destroyed by the fire as to prevent their being reproduced in their entirety by a competent man."

In this same affidavit he said he received $60 per week and part of the time $45 a week when working on these. To allow wages for his assistants at $135 a week or $585 per month is clearly excessive.

Witnesses for appellants, who were in no way interested in the outcome of this case, stated that such wages ranged from $36 to $45 per week, while the wages of knitters, instead of $18 per day, was $35 to $45 per week.

Walter's statement that a draftsman was entitled to $600 per month and a pattern maker to $468 per month was disputed.

Reconciling as best we can the evidence on this question of wages, and making due allowance for depreciation in the value of the machinery, we conclude that the loss on account of these machines should be fixed at $40,000.

The decree fixing the amount of liability of each appellant must be modified accordingly. The amount against each appellant is hereby fixed as follows:

American Dentral Insurance Company, the sum of $8,672.94.

Ætna Insurance Company, the sum of $8,672.94.

Albany Insurance Company of Albany, N. Y., the sum of $4,469.24.

Federal Union Insurance Company, the sum of $7,091.64.

Scottish Union & National Insurance Company, the sum of $7,091.64.

The Yorkshire Insurance Company, the sum of $7,091.64.

The Reliance Insurance Company of Philadelphia, the sum of $7,800.50.

As thus modified, with interest as allowed in the decree, the decree is affirmed. Appellants recover their costs on this appeal.