Willard F. LIBBY

v.

William PERRY et al.

Supreme Judicial Court of Maine.

Nov. 13, 1973.

Farris & Foley, P. A. by Richard A. Foley, Augusta, for plaintiff.

Robert W. O'Connor, Frank E. Southard, Jr., Augusta, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

The plaintiff's wife purchased tickets for the dance to be held at the Augusta State Armory on December 31, 1966. This New Year's Eve event was a traditional affair with the Libbys and, following a reception with friends at their home where intoxicating beverages were served, Mr. and Mrs. Libby were driven to the Armory by one of their guests and his wife. The women were let out and the men continued on and parked the car in the lot adjacent to the building. This lot is provided for parking purposes and has always been used by patrons of the various activities conducted at the Armory.

It was about 9:00 o'clock when the Libby party reached the area. It was a cold night and, as he walked from the car in the parking lot to the Armory and observed the icy condition which existed as a result of a freezing rain-storm the previous day, Mr. Libby remarked to his friend that he would like to have a dollar for every leg that was broken that night. The entrance to the Armory overlooks a wide series of steps which extend across the front of the building. The plaintiff and his friend, after joining the women at the building, walked up the steps on the side of the building closest to the parking lot and entered through a door on that side. Sometime after midnight the Libby party left the hall through the main door in the middle of the Armory and walked straight down the steps at that point. The steps themselves were clear of snow and ice. But, when Mr. Libby reached the ground level, he slipped on an icy rut and fell. In the process, he broke a bone in his right leg. The defendants appeal from a jury verdict in the amount of $7,500.00 in favor of the plaintiff.

The evidence is uncontradicted that the area adjacent to the Armory steps had not

been sanded nor salted to ensure a better footing for the patrons of the dance. The plaintiff contends it was the positive duty of the Armory Committee, and the members thereof as sponsors of this dance, to exercise reasonable care in seeing that the area of the parking lot adjacent to the Armory, which the invited guests would be reasonably expected to use for ingress or egress, was reasonably safe for that purpose and that the failure in the instant case to take any precautions to protect these guests from the hazardous icy conditions of the exit area amounted to a breach of duty subjecting the defendants to liability for the plaintiff's injuries proximately resulting therefrom.

The defendants, by motion for a directed verdict under M.R.C.P., Rule 50(a), have raised the issue of liability on the following grounds:

1) The defendants as members of the Armory Committee were not proper parties, because the sponsors of the dance were the Maine National Guard Units and not the members of the Armory Committee as such.

2) If the defendants were members of the Armory Committee, their membership did not per se, nor under the facts of the instant case, subject them individually to vicarious liability for the torts of the Committee.

3) The Armory Committee was not in possession and control of the area adjacent to the Armory building and, therefore, owed no duty of care to the plaintiff in connection with the approaches to the dance site, and, since it is undisputed that the plaintiff's fall occurred outside the perimeter of the premises under the control of the Committee, no liability could ensue against the defendant members.

## I  DEFENDANTS—PROPER PARTIES

The defendants rely most heavily upon the bylaws of the Armory Committee to support their claim that they, as individuals, are not the members of the Committee, but that their respective units of the National Guard which they represent are the members. They point to three articles of these bylaws to substantiate their argument.

Article II, in stating the object of the Committee, says that its purpose is:

"1.  To stimulate interest in the units that are stationed in the Armory.

2.  To organize and control all fund raising activities.

3.  To control the expenditures of funds for the benefit of members of the represented units.

4.  To be of community service."

Article III, in establishing the membership of the Committee, provides:

"Members of the Committee will consist of the following: all officers of Headquarters Det, 181st Sig Det, and 142nd Ord Co (DS) with an elected representative from each platoon of Hqs and 142nd Ord Co (DS), plus the AST1st Sgt, and Supply Sergeant of Hqs Det and 142nd Ord Co (DS). The representatives of the platoons to be elected in January each year to take office in February coinciding with the election of Committee Officers."

Article IX, when referring to the distribution of net proceeds, ordains:

"When funds are available any unit may request a split for the units: the split will be made as follows: 69% to the 142nd Ord Co (DS): 29% to Headquarters Det and 2% to the 181st Signal Unit."

■  We note initially that the membership clause does not structure the body of the Armory Committee in terms of the respective National Guard units which make use of the Armory, but rather establishes eligibility in named officers and elected

representatives of the respective units. We further readily observe that the purpose underlying the formation of the Armory Committee was to create an independent group, which, although representative of the units for whose benefit the Committee was formed in the first place, would have sole control of all fund raising activities and expenditures in connection therewith. With these considerations in mind, we hold that the National Guard units were not intended to be the members of the Armory Committee. The bylaws clearly indicate that the membership of the Committee consists of the individual designated officers and representatives of the respective National Guard units who manifested their assent to become members of the Committee by participating in its organization, meetings and/or activities.

■ The defendants further argue, however, that their participation in the activities of the Armory Committee was not a free choice on their part, but, as testified to by Mr. William Perry, a defendant and president of the Committee at the time the dance was held, the promotion of an enlisted man to the rank of an officer automatically imposed the duty on him to serve on the Committee. It is true that the bylaws do specify that the members of the Committee *will* consist of the designated officers of the respective National Guard units located at the Augusta Armory. Nevertheless, Mr. Perry knew of no duly promulgated regulation which either required him or any other person, as one of the designated officers under the Committee bylaw,

to participate in the Armory Committee's activities or gave their commanding officer the power to order them to become members.[1] The mistaken belief that such was their duty would not destroy the voluntary aspect of the association of the members of the Armory Committee in the prosecution of the common purposes outlined in the bylaws. The defendants' acceptance of membership in the Armory Committee, by proof of participation in its organization, meetings and activities, is sufficiently supported by the evidence to sustain the finding below that the defendants were members of a voluntary association. See, Johnson v. South Blue Hill Cemetery Association, 1966, Me., 221 A.2d 280.

■ Article IX of the bylaws which gives any of the units of the National Guard located at the Augusta Armory the right to request a distribution of the accumulated funds in the treasury, subject to the requirement under Article X that a balance of $500.00 be maintained at all times except when otherwise approved by the Armory Committee for an emergency, does not militate against the fact that the Armory Committee is a voluntary association within the meaning of the law, even though the ultimate beneficiaries of the activities of the Committee be the members of the National Guard units.

■ The Armory Committee, as a voluntary unincorporated association and a non-entity at common law, in the absence of statutory authority, had no such legal existence as permitted it to acquire and hold

---

1. We are aware of the existence of 25 M.R.S.A., § 805, which provided for a State National Guard Association in the following language:

"The commissioned officers of the National Guard may organize themselves into an association the name of which shall be 'The National Guard Association of the State of Maine.' Such association may adopt a constitution and bylaws not repugnant to law, orders or regulations, and alter and amend the same, and may take and hold such real and personal property as may be necessary for the purposes of the association."

This statute on its face sanctions the organization of a Statewide association, but in no way suggests that membership in the association is mandated statutorily nor does it indicate that it could be compelled by orders or regulations adopted by the National Guard. [25 M.R.S.A., § 805 was expressly repealed in the reorganization of the Department of Military, Civil Defense and Veterans' Services, at the first special session of the 105th Legislature (c. 580, § 2), but was reenacted as Title 37–A, M.R.S.A., § 305 (c. 580, § 1)].

property in its associate name. Johnson v. Blue Hill Cemetery Association, supra.

■■ The constitution and bylaws of a voluntary unincorporated association, provided they are not unreasonable, nor contrary to public policy nor to constitutional or statutory requirements, constitute a valid enforceable contract between the members and the association and govern their mutual rights and liabilities. An individual in becoming a member impliedly agrees to be bound by, and becomes a party to, such contract, and his rights and duties are measured by the terms of such constitution and bylaws. Liggett v. Koivunen, 1948, 227 Minn. 114, 34 N.W.2d 345; Leeds v. Harrison, 1950, 7 N.J.Super. 558, 72 A.2d 371; Mackey v. Moss, 1965, 278 Ala. 55, 175 So.2d 749; 6 Am.Jur.2d, Associations and Clubs, § 8; Vol. 7 C.J.S. Associations, § 11.

■ The Supreme Judicial Court of Massachusetts well expressed the applicable rule of law in Kelley v. Weiss, 1951, 328 Mass. 197, 102 N.E.2d 93:

"The rights and obligations of the members of a voluntary unincorporated association as to each other and as to the group comprising the association are fixed and established by the constitution and bylaws. They constitute the governing rules for the internal management of its affairs and for the conduct of its business. They are the basis upon which the members have joined to accomplish the aim and object of the association and are in effect in the nature of a contract binding those who have become members provided they are not inconsistent with some controlling principle of law."

■ We hold that the members of the National Guard units located at the Augusta Armory were the third party beneficiaries of the contract of association resulting from the articles of organization, otherwise termed the bylaws, of the Armory Committee, by the terms of which the net proceeds of the activities of the members of the Committee were payable on request to the National Guard units or their members. It is obvious that the bylaws intended certain designated persons to constitute the membership of the Armory Committee, and not the National Guard units to which these persons may be attached. The fact that the rental agreement was made in the name of the Augusta National Guard units when the Armory Committee through Sergeant Donald H. Storr, a member of its Steering Committee, secured the authority to use the Armory for the dance, is of no meaningful relevance in our determination of the membership of the Committee under the articles of organization, when we consider that it is undisputed the Armory Committee sponsored the dance and paid the rental fee. Although the rental agreement designated the Augusta National Guard units as the authorized organization renting the Armory, the Armory Committee took possession under that agreement for the purpose of carrying out its planned activity of sponsoring this New Year's Eve dance in its efforts to promote, as provided in the bylaws, a stimulation of interest in the National Guard units stationed at the Augusta Armory and service to the community.

■ Mr. Perry testified it was his opinion that on becoming an officer he automatically became a member of the Armory Committee. In the absence of any evidence that the official duties of an officer in the National Guard required participation in an association organized to conduct social activities, albeit for the benefit of the Guard, acceptance of membership in such association must be viewed as voluntary on the part of the accepting member, subjecting him to whatever liability the law applicable to voluntary unincorporated associations may impose.

II  LIABILITY OF DEFENDANTS AS MEMBERS OF THE ARMORY COMMITTEE FOR THE TORTS OF THIS VOLUNTARY UNINCORPORATED ASSOCIATION

This is the first occasion this Court has had to determine and establish the extent of liability arising from membership of an

individual in a voluntary unincorporated association in respect to tortious conduct attributable to the association.

Our Court has addressed itself to the problem of individual member liability in such an association for the contractual obligations of the association.

In Frost v. Walker, 1872, 60 Me. 468, our Court held in the case of a voluntary association formed for the purpose of engaging in business and making profits such as a joint-stock express company, that its members are mere partners and as such are personally liable for all its debts. See also, McGreary v. Chandler, 1870, 58 Me. 537.

Courts, however, have differentiated between a voluntary unincorporated association organized for commercial profit-making and one organized for fraternal or social purposes, and have applied a different rule to determine the liability of individual members of the association.

The Connecticut Court, in Azzolina v. Order of Sons of Italy, Conte Luigi Cadorna, No. 440, 1935, 119 Conn. 681, 691, 179 A. 201, 204, has clearly expressed the two distinctive bases of member responsibility concerning the contractual obligations of such an association in manner as follows:

"In the case of a voluntary association formed for the purpose of engaging in business and making profits, its members are liable, as partners, to third persons upon contracts which are within its scope and are entered into with actual or apparent authority, and a joint judgment against them is justified. * * * But when, as here, the purpose of the association is not business or profit, the liability, if any, of its members is not in its nature that of partners but that arising out of the relation of principal and agent, and only those members who au-

thorize or subsequently ratify an obligation are liable on account of it."

Our Court, without addressing itself to this differentiating aspect of voluntary unincorporated associations, did state the general rule to be that—

"[a] person may become a member of a voluntary unincorporated association, and make himself liable to third parties upon contracts authorized by a vote of the association within its scope at a meeting of the association, even though he did not vote to give such authority, or did not attend the meeting." Cheney v. Goodwin, 1896, 88 Me. 563, 34 A. 420.

But, in *Cheney*, supra, the Court found that there was no determinate membership distinct from the general public to form a valid voluntary unincorporated association, and thus the rule expounded by the *Cheney* Court was at best dictum. The same is true of McKenney v. Bowie, 1900, 94 Me. 397, 47 A. 918, where the Court regarded the note, upon which suit was brought, as the personal obligation of the defendant signers and not that of the association.

In Chick v. Trevett, 1841, 20 Me. 462, the defendants were the signers of the instrument upon which their liability was based. They had authorized the obligation and as such would be liable, notwithstanding the association they represented was of the nonprofit variety. See, Annotation, 7 A.L.R. at page 222 et seq., and cases cited.

Although we intimate no opinion respecting the extent of viability of these dicta expressed by our Court nearly 75 years ago or more, we do believe, however, that, in the area of tort liability to be visited upon the individual members of a voluntary association, the distinction between voluntary associations set up for purely commercial profit-making purposes and those organized for fraternal or social ends should be recognized and a different rule respecting responsibility of the indi-

vidual members for the torts of the association be adopted.

■ A voluntary unincorporated association, formed to accomplish a common purpose, is duty bound to use the same care to avoid injury to others as natural persons are individually, but mere membership in the associate body does not make all the members liable for any and all unlawful or negligent acts of their associates. See, Feldman v. North British & Mercantile Ins. Co., 1943, 4 Cir., 137 F.2d 266; Sweetman v. Barrows, 1928, 263 Mass. 349, 161 N.E. 272, 62 A.L.R. 311; Orser v. Vierra, 1967, 252 Cal.App.2d 660, 60 Cal. Rptr. 708.

■ In the case of a voluntary association such as the Armory Committee, dedicated by the mandate of its bylaws to promote social services for the immediate benefit of its members and the ultimate interest of the National Guard units located at the Augusta Armory, while at the same time enhancing good public relations between the Guard and the area residents through their sponsored social events, individual members of the association do not, merely by virtue of their membership in such association, subject themselves to liability for injuries sustained as a result of the negligent conduct of their associates or their agents in the running of the social event sponsored by the association. Liability attaches only to those members of the association who are shown to have actively participated in the affair resulting in plaintiff's injuries. Lyons v. American Legion Post No. 650 Realty Co., 1961, 172 Ohio St. 331, 175 N.E.2d 733.

■ In the instant case, the evidence was sufficient to support the factual inference that the Armory Committee had assumed control of the premises under the rental agreement with the Adjutant General's Department. The defect which caused the plaintiff's fall and consequential injuries was shown to have existed for a suffi-

cient period of time to have permitted protective action such as salting and sanding and that the members of the Armory Committee or their agents, in charge of the affair, in the exercise of reasonable care should have known of, or discovered, the dangerous condition caused by the frozen ruts in the immediate approaches to the steps leading to the armory building where the dance was being held. The minutes of the meeting of the Committee in April 1966, indicating a unanimous vote of the attending members setting the charge of $2.00 per person for the New Year's Eve ball, establishes not only their presence at the meeting, but also, by justifiable inference, an active participation in the planned event by the defendants Pillsbury, Nichols, Bryant, Laflin, Perry, Fenderson, Quinn, Colford and Weymouth. The defendants Madore and Tondreau were shown to have approved the affair by the evidentiary records showing that they respectively held the office of treasurer during the period of planning and staging of the dance. The jury could have inferred active participation of the other defendants Musk, Lasso, Jacques, Hayes, Gagnon, Morang, Liscomb, Richards and Drapeau, by reason of their attendance record immediately prior to the holding of the event. Defendant Storr's direct involvement was evidenced by the fact that he applied for the use of the Armory. The record, on the other hand, is silent respecting defendant Turner's participation in, or attendance at, the meeting of the Committee in April, 1966 and indicates that he was absent from the October, November and December, 1966 meetings which preceded the dance. Under such circumstances, it was error as a matter of law for the jury to find the defendant Turner responsible to the plaintiff with the other defendants on the mere evidence that he was a member of the Armory Committee. All the other defendants actively participated, aided and abetted in the affair and are responsible to the plaintiff for the wrongful acts of omission of their associates or their agents in carrying out the

social event duly authorized by the association.

## III RESPONSIBILITY FOR INJURIES SUFFERED BEYOND THE SO-CALLED "LEASED" PREMISES

The defendants further contend that, even if they would be properly responsible in damages for an injury to the plaintiff suffered within the area of the armory building itself or upon the steps leading to it, nevertheless, since plaintiff's fall took place beyond the area over which they had possession and control, they owed no duty to the plaintiff and the judgment against them is error.

The jury could find from the evidence in this record that the plaintiff fell as he stepped off the steps leading to the Armory, at least within the immediate area that a patron of the dance would have to use to make his exit following the close of the ball. It is true that the rental agreement did not purport to "lease" the public parking lot adjacent to the armory building, nor any walkway or driveway leading thereto from the public highway. The evidence is clear, however, that the approaches to the Armory and the parking lot were always used in the past in connection with activities conducted at the Armory under similar rental agreements as existed in the instant case. It is self evident from the record that, if the approaches to the Armory could not be used by the patrons of this New Year's Eve ball, then the dance itself could not be held. By inviting the public to this dance, the Armory Committee implicitly extended an invitation to use the approaches to the Armory.

The plaintiff, having purchased a ticket to attend the ball, was a business invitee of the Armory Committee. The owner or occupier of land owes to his business invitees the positive duty of exercising reasonable care to provide him with walkways or areaways which he is invited to use, or

which he would be reasonably expected to use, which are reasonably safe for his use. Even though he does not insure safety to his business invitees, nevertheless, his legal obligation is to use ordinary care to ensure that the premises to be used are reasonably safe in the light of the totality of the existing circumstances. The mere fact that snow and ice conditions are prevalent during the course of our Maine winters is not sufficient justification for the insulation of the occupier of land from liability to his business invitees exposed to an unreasonable risk of harm. Isaacson v. Husson College, 1972, Me., 297 A.2d 98.

In Isaacson v. Husson College, supra, the plaintiff's injuries were suffered upon an areaway within the premises occupied and controlled by the College. In the instant case, the accident happened as the plaintiff stepped off the premises occupied and controlled by the Armory Committee, but in the immediate areaway which the plaintiff business invitee was either invited to use, or which he would be reasonably expected to use, to make his exit from the premises upon which he had been invited to come.

Courts generally, in analogous situations, have extended the duty of the invitor to his business invitees beyond the precise boundaries of the premises under his control or occupancy to include the approaches which they are expressly or impliedly invited to use or which they would be reasonably expected to use, even though these approaches be not under the invitor's absolute control. See, Cannon v. S. S. Kresge Co., 1938, 233 Mo.App. 173, 116 S.W.2d 559; Viands v. Safeway Stores, 1954, D. C.Mun.App., 107 A.2d 118; Shields v. Food Fair Stores of Florida, 1958, Fla. App., 106 So.2d 90; McDonald v. Frontier Lanes, Inc., 1971, 1 Ill.App.3d 345, 272 N. E.2d 369. See also, Phillips v. Seltzer, 1957, 2 Cir., 240 F.2d 857.

In the instant case, all the actively participating defendant members of the

Armory Committee owed the plaintiff business invitee the positive duty of exercising through their associates or agents in charge of the dance reasonable care to provide him with walkways or areaways reasonably safe from unreasonable risk of harm in the light of the totality of the existing circumstances.

It was for the jury to say whether this duty was properly and sufficiently discharged. See, Cooley v. Makse, 1964, 46 Ill.App.2d 25, 196 N.E.2d 396.

## IV PLAINTIFF'S NEGLIGENCE

The defendants have raised the issue of the plaintiff's negligence for the first time on appeal. This is in violation of Rule 50(a), M.R.C.P., which mandates that a motion for a directed verdict shall state the specific grounds therefor. The defendants' motion in the Court below did not suggest the plaintiff's negligence as a ground for the direction of a verdict in favor of the defendants. As we said in Frost v. Lucey, 1967, Me., 231 A.2d 441:

> "[I]t is fundamental and a rule of general application in the concept of appellate practice that save for certain recognized exceptions, questions of error not raised and properly preserved in the trial court will not be considered on appeal."

This alleged claim of error is not before us for review.

The entry will be

Appeal sustained as to the appellant Turner.

Appeal denied as to all other appellants.

All Justices concurring.

WEBBER, J., sat at argument, but retired before this opinion was adopted.