STATE OF MAINE                                   SUPERIOR COURT  
ANDROSCOGGIN, ss.                          CIVIL ACTION  
                   RECEIVED & FILED         DOCKET NO. CV-07-115

ROGER MICHAUD              AUG 01 200?

       Plaintiff          ANDROSCOGGIN  
                        SUPERIOR COURT

v.                                            ORDER & DECISION

RACEWAY GOVERNMENT REALTY,  
LLC AND L P POIRIER & SONS, INC.

       Defendants

## BEFORE THE COURT

This matter is before the court on defendant Poirier's motions for summary judgment brought against the plaintiff and Raceway on all counts contained in the complaint and third-party complaint.

## BACKGROUND AND PROCEDURAL HISTORY

On December 19, 2005, Michaud was injured when he slipped on ice and fell while he was crossing a parking lot after conducting business at the Department of Motor Vehicles in a building located at 36 Mollison Way on December 19, 2005. Raceway owns the building located at 36 Mollison Way but leases the building to agencies of the State of Maine, including the DMV. Raceway, as the landlord, retained responsibility for snowplowing, handwork and sanding at the property. Raceway contracted with Poirier to provide snowplowing, handwork and sanding at the parking lot adjacent to 36 Mollison Way.

Michaud filed a two-count complaint against Raceway and the State of Maine on June 1, 2007. Michaud claimed that Raceway negligently failed to

maintain the property in a reasonably safe condition. Raceway filed an answer and third-party complaint against L. P. Poirier. Raceway alleges in its third-party complaint that Poirier breached its duty to Raceway and that it is responsible for contribution if Raceway is liable to the plaintiff. Poirier filed a cross-claim against Raceway for indemnification.

On December 10, 2007, Michaud filed his first amended complaint containing four counts, in which he alleged in count I that Raceway was negligent in maintaining the property, in count II that the State of Maine was negligent in maintaining the property, in count III that Poirier was negligent in maintaining the property and in count IV that Poirier breached its snow and ice removal contract of which plaintiff claims he was a beneficiary. The defendants filed answers, denying all claims. The State of Maine filed cross-claims against Raceway and Poirier. All claims with respect to the State of Maine, including any claims filed against the State and any claims filed by the State, were dismissed pursuant to a Stipulation of Dismissal on March 10, 2008.

On April 3, 2008, Poirier filed the present motions for summary judgment on all claims made against it, including the complaint filed by plaintiff and the third-party complaint filed by Raceway. Poirier's motion contends that with respect to the plaintiff, Poirier owed no duty to Michaud and Michaud was not the intended beneficiary of the contract entered into by Poirier. Poirier's second motion contends that with respect to Raceway, Raceway is unable to present any evidence that Poirier breached its contract and, under the terms of the contract, any claim for contribution has been waived. As discussed below, Poirier's motion for summary judgment against the plaintiff is granted in part and denied in part and its motion against Raceway is denied in its entirety.

2

## DISCUSSION

### I.   Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. However, a party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A. 2d 63, 65.

### II.   Negligence

The burden is on the plaintiff to establish a *prima facie* case for each element of negligence, including that a duty existed and that the duty was breached, proximately causing damages. *Dunham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577, 579 (citations omitted). A party has a duty of care when he or she "is under an obligation for the benefit of a particular plaintiff." *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303, 304 (Me. 1991). Whether a duty of care exists is a legal question. *Pelletier v. Fort Ken Golf Club*, 662 A.2d 220, 222 (Me. 1995). "A defendant is entitled to judgment as a matter of law on a negligence

claim if that defendant owes no duty to the plaintiff." *Budzko v. One City Ctr. Assocs. Ltd. Partn.*, 2001 ME 37, ¶ 10, 767 A.2d 310, 313.

## A. Duty and Breach of Duty

Possession and control are generally required to establish that an occupier of land owes a duty of care to those present on the premises. See *Quadrino*, 588 A.2d 303 (Me. 1991). For example, in *Quadrino*, the plaintiff was walking from a motel and restaurant towards the downtown of Millbridge, and as he crossed the defendant bank's driveway, he tripped on a curb on a curb constructed and maintained by the Department of Transportation on the motel's property. 588 A.2d at 304. Although he landed on the bank's property, the Law Court held that the bank did not control the particular area where the plaintiff fell and thus owed him no duty of care. *Id.* at 305. The relevant inquiry was whether "the defendant was, in fact, the possessor of the land at the time of the injury." *Id.*

However, mere ownership of the land is not a necessary prerequisite to a finding of possession and control. See *Pelletier*, 666 A.2d 220 (Me. 1995); *Quadrino*, 588 A.2d 303, 304 (Me. 1991). In *Pelletier*, a woman was injured at a golf club when a golf ball she hit ricocheted off the railroad tracks crossing a fairway and struck her nose. 662 A.2d at 221. The golf club argued that it owned no duty to plaintiff because the railroad tracks were not located on its property. *Id.* The Law Court disagreed, holding that the club did have a duty to the plaintiff because it "possesse[d]" the land by "manifest[ing] an intention to have control over" it. *Id.* at 222. Furthermore, the club had "invited golfers to use" the land by incorporating the tracks into the course. *Id.*

While possession and control are generally required to establish a duty of

4

care for occupiers of land, business invitees are also entitled to reasonably safe means of ingress and egress. *Libby v. Perry*, 311 A.2d 527, 535 (Me. 1973). In *Libby*, a man slipped on an icy rut in the ground as he was leaving a dance at the Augusta State Armory. *Id.* at 529. The Armory Committee argued that it owed no duty of care to the plaintiff because it did not possess or control the area where he fell. *Id.* at 535. The Law Court acknowledged that the place where the plaintiff fell was not part of the Armory Committee's lease, but held that they did owe a duty of reasonable care to the plaintiff "to provide him with walkways or areaways reasonably safe from unreasonable risk and harm." *Id.* at 536.

Poirier correctly argues that that there is no evidence that Poirier possessed the parking lot. Plaintiff's reliance on *Hankard v. Beal*, 543 A. 2d 1376 (Me. 1998) is misplaced because in *Hankard*, unlike the facts in this case, the question was whether the landlord reserved control for a dangerous condition within the meaning of *Nichols v. Marsden*, 483 A. 2d 341 (Me. 1984). Raceway owned the property and leased it to the State of Maine. Poirier's only relationship to the property was that it entered into a contract to provide snowplowing, handwork and sanding. By agreeing to provide these services, Poirier did not occupy or manifest an intent to control the property. See *Alexander v. Mitchell*, 2007 ME 108, ¶ 25, 930 A. 2d 1016, 1023.

### B.     Dangerous Condition

Plaintiff argues in his opposition to the motion for summary judgment that even without a possessory interest in the property, Poirier owed a duty of care to Michaud because it negligently created a dangerous condition. Plaintiff argues that Poirier created a dangerous condition because it plowed snow into

5

banks above the area where the plaintiff fell, knowing that the slope of the parking lot created specific areas susceptible to ice formation. The record discloses that the facts relevant to this issue are contested.

The Law Court has provided that a "nonpossessor who negligently creates a dangerous condition on the land may be liable for reasonably foreseeable harm. " *Colvin v. A. R. Cable Services-ME, Inc.*, 1997 ME 163, ¶ 7, 697 A. 2d 1289, 1290. See also *Quirion v. Geroux*, 2008 ME 14, ¶ 10. Poirier did owe a duty to the public who used the parking lot to not cause an unreasonably dangerous condition through its snow plowing and sanding of the parking lot. The evidence cited in the parties' Rule 56(h) statements generates genuine issues of material fact about whether Poirier breached that duty, or whether any such breach was the cause of Michaud's injury. Thus, the court denies Poirier's motion for summary judgment on Michaud's negligence claim.

## II.     Intended Beneficiary of Contract between Raceway and Poirier

In count four, plaintiff contends that he was an intended beneficiary of the contract between Raceway and Poirier. In *Denman v. Peoples Heritage Bank, Inc.*, 1998 ME, 12, 704 A. 2d 411, the plaintiff claimed she was an intended beneficiary of a contract between a property owner and a snow removal contractor. *Id.* at ¶ 8. Relying on the Restatement (Second) of Contracts §§ 302 and 315 (1981), the Law Court observed that Denman was required to show that the property owner intended that she receive an enforceable benefit under the maintenance contract. *Id.* at ¶ 9. "It is not enough that [plaintiff] benefited or could have benefited from the performance of the contract. The intent must be clear and definite, whether it is expressed in the contract itself or in the circumstances surrounding its execution." *Id.* (citations and quotation marks omitted).

6

As in *Denman*, there is no language in the contract that generates an issue that the property owner intended to create in the plaintiff enforceable rights as an intended beneficiary. And, the plaintiff offered no evidence of any circumstances attendant to the execution of the contract that would support a finding of a clear intention to create in the plaintiff enforceable rights in the contract. *Id.* Whether the public benefits from the contract is not the focus. Rather, the focus, as directed in *Denman*, is whether Raceway and Poirier intended the public to have enforceable rights in the contract. Michaud has failed to demonstrate that there is any genuine issue of fact with regard to his third-party beneficiary claim; therefore, summary judgment is granted on count IV of the comlaint.

### III. Breach of Contract and Contribution

Poirier argues that Raceway is unable to present sufficient evidence that it breach its contract with Raceway, and furthermore, the express terms of the contract provided a disclaimer for any liability. The contract provided: "Note: We are not responsible for any slip or falls due to weather conditions." Because the court concludes that the parties' Rule 56(h) statements disclose that there are genuine issues of material fact about what caused Michaud's injury, whether either Raceway or Poirier owed any duty to Michaud, and whether Poirier breached its contract with Raceway, the motion for summary judgment is denied.

### CONCLUSION

Poirier's motion for summary judgment on count III of the amended complaint is DENIED. Poirier's motion for summary judgment on count IV of

7

the amended complaint is GRANTED. Poirier's motion for summary judgment on the third-party complaint is DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: August 1, 2008

Joyce A. Wheeler, Justice

STATE OF MAINE                                                    SUPERIOR COURT
ANDROSCOGGIN, ss.                                          CIVIL ACTION
                                                                          DOCKET NO. CV-07-115

ROGER MICHAUD

          Plaintiff

v.                                                                         ORDER ON MOTIONS *IN LIMINE*

RACEWAY GOVERNMENT REALTY,
LLC AND L P POIRIER & SONS, INC.

          Defendants

## BEFORE THE COURT

This matter is on the civil jury list for the month of October and is now before the court on defendant Poirier's motion in limine requesting that evidence of plaintiff's medical expenses be limited to the amounts paid by MaineCare. Raceway also filed a motion in limine, joining with Poirier's motion to exclude evidence of medical bills in excess of amounts paid by MaineCare. Plaintiff objects, arguing that defendants' motions lack any legal or factual basis, would unnecessarily complicate the proof in this case, and seek an unjust result. In short, plaintiff argues that payments by MaineCare do not represent reasonable value of medical expenses and defendants have proffered no evidence from which the court could reach such a conclusion.

## BACKGROUND AND PROCEDURAL HISTORY

On December 19, 2005, Michaud was injured when he slipped on ice and fell while he was crossing a parking lot after conducting business at the Department of Motor Vehicles in a building located at 36 Mollison Way on December 19, 2005. At, or subsequent to, the time of plaintiff's accident,

MaineCare, a government program that provides health coverage to eligible recipients, covered him. MaineCare paid the plaintiff's medical providers less than was originally billed for the services provided. Under federal and state law, the MaineCare payment represent full and final payment of plaintiff's medical bills and the plaintiff is not responsible and cannot be responsible to pay the amounts written off by the medical care providers. At issue is whether the evidence of plaintiff's medical expenses should be limited to the amounts paid by MaineCare.

## DISCUSSION

Maine law provides that an injured party is entitled to the reasonable value of medical services that have been reasonably required and actually used in treatment of the plaintiff and related to the injury complained of. *Stubbs v. Bartlett*, 478 A. 2d 690, 692 (Me. 1984). The collateral source rule generally applies when determining the reasonable value of medical services. The collateral source rule provides that payments made or benefits conferred by other sources are not to be subtracted from a plaintiff's recovery. *Werner v. Lane*, 393 A. 2d 1239 (Me. 1978). See also *Hoitt v. Hall*, 661 A. 2d 669, 673-74 (Me. 1995). Although the collateral source rule does not specifically address the issue presented in this case, there is no reason that this rule should not also apply here.

In the case at hand, plaintiff was eligible for MaineCare during his care and treatment. MaineCare is Maine's version of Medicaid, a program jointly funded by the state and the federal governments in accordance with the Social Security Act, 42 U.S.C. 401 et seq. *Fryeburg Healthcare v. Department of Human Services*, 1999 ME 122, 734 A. 2d 1141. The State of Maine pays for medical care of eligible recipients and makes adjustments to bills submitted by providers for

2

items it deems unreasonable. *Sebasticook Valley Healthcare Facility, Inc. v. State of Maine*, 484 A. 2d 595 (Me. 1984). By federal law, the medical providers cannot charge the patient for the difference between their charges and the amount paid by the state. 42 U.S.C. 1396(a)(25)(C); 42 C.F.R. § 447.15; 42 C.F.R. § 447.20. Health care providers who accept MaineCare payments accept such payments as payment in full for the services.

To accept defendant's position, this court would have to rule that the reasonable value of the medical care received by plaintiff is the amount paid by MaineCare. Given the federal and state payment scheme, this simply is not the case since reimbursement rates are often based on administrative rulemaking and vary greatly depending on the service and provider. Furthermore, reimbursement rates are set for public purposes as much as any other factor. Reimbursement rates are not set with an eye towards what is fair and reasonable; but rather, what the public purse can barely afford to provide the most amount of coverage for the most amount of people. *See* Me. Dep't of Health & Hum. Serv., 10-144 CMR 101-1.08-1 and 101-1.02(A).

Maine courts have long applied the collateral source rule in order to allow negligence victims to recover the reasonable of medical services for which they incurred no cost, either through insurance, gratuities or some other advantageous benefit. Although the Law Court has not addressed the precise issue raised in defendants' motions, the Court has reasoned:

> If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him. One way of stating

3

this conclusion is to say that it is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives.

*Hoitt v. Hall*, 661 A. 2d 669, 673 (Me. 1995) (quoting RESTATEMENT (SECOND) OF TORTS § 920A cmt. b (1979)[1]; *Werner v. Lane*, 393 A. 2d 1329, 1333-1337 (Me. 1978).

Alexander's MAINE JURY INSTRUCTION MANUAL 7-108 (4th ed. 2008) reflects this legal analysis. Instruction at Section 7-108 provides:

> Medical expenses includes the reasonable value of medical services including; examination and care by doctors and other medical personnel, hospital care and treatment, medicine and other medical supplies shown by the evidence to have been reasonably required and actually used in treatment of the plaintiff, plus a sum to compensate the plaintiff for any medical care, medicines and medical supplies which you find are reasonably certain to be required for future treatment of the plaintiff caused by the defendant's negligence.

The comment to section 7-108 relies on *Werner* and explains that "[m]edical expense damages may be recovered for charges paid by or for the plaintiff, charges paid by a collateral source or a third party, or charges actually incurred but later written off or otherwise not collected. Mention to the jury of collateral source payments or writeoffs should be avoided." Quoting *Werner*, Alexander recites:

[T]he fact [that] necessary medical and nursing services are rendered gratuitously to one who is injured as a result of the negligence of another should not preclude the injured party from recovering the reasonable value of those services as part of . . . compensatory damages in an action against a tortfeasor. 393 A. 2d at 1335.

---

[1] Under section 920A, which the Law Court has cited with approval, the rule that "collateral benefits are not subtracted from the plaintiff's recovery applies to the following types of benefits: (1) [i]nsurance policies . . .; (2) [e]mloyment benefits; (3) [g]ratuities . . . ; and (4) [s]ocial legislation benefits." *Id.* cmt. c. *See also Hoitt*, 661 A. 2d at 674.

4

The parties cite to case law elsewhere in the country, which is divided on this issue and not controlling here in Maine. Under existing Maine law, it is for the factfinder to decide what the "reasonable value" of plaintiff's medical services is, based on the evidence of the amounts billed by the medical service providers and any other relevant evidence not implicating the collateral source rule.

## CONCLUSION

Defendants' motions *in limine* are DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: August 4, 2008

_____
Joyce A. Wheeler, Justice

5